**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**CW**

DONNA HINES Plaintiff,

vs.

CALIFORNIA PUBLIC
UTILITIES COMMISSION/
APPLING / AGUILAR/ Defendant(s).
WULLENJOHN / JOHN DOES
1-30

C 07 4145

CASE NO. _____

**EMPLOYMENT DISCRIMINATION
COMPLAINT**

1.  Plaintiff resides at:

    Address 268 BUSH STREET, # 3204

    City, State & Zip Code SAN FRANCISCO, CA 94104

    Phone (415) 205 - 3377

2.  Defendant is located at:

    Address 505 VAN NESS AVE

    City, State & Zip Code SAN FRANCISCO, CA 94102

3.  This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employ-

ment discrimination.  Jurisdiction is conferred on this Court by 42 U.S.C. Section 2000e-5.

Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).

4.  The acts complained of in this suit concern:

    a. __ Failure to employ me.

    b. __ Termination of my employment.

Form-Intake 2 (Rev. 4/05)                          - 1 -

1     c. ✓ Failure to promote me.

2     d. __ Other acts as specified below.

3    RETALIATION, HARASSMENT + HOSTILE WORK

4    ENVIRONMENT' OBSTRUCTION OF JUSTICE

5    + OTHER UNLAWFUL EMPLOYMENT PRACTICES

6    _____

7    _____

8    _____

9   5.    Defendant's conduct is discriminatory with respect to the following:

10     a. ✓ My race or color.

11     b. __ My religion.

12     c. __ My sex.

13     d. __ My national origin.

14     e. ✓ Other as specified below.

15    RETALIATORY MOTIVE,

16   6.    The basic facts surrounding my claim of discrimination are:

17    AS ATTACHED, 30+ PAGE COMPLAINT

18    WITH CASE BACKGROUND

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____

25   7.    The alleged discrimination occurred on or about ___FALL 2004 - PRESENT___

26                              (DATE)

27   8.    I filed charges with the Federal Equal Employment Opportunity Commission (or the

28    California Department of Fair Employment and Housing) regarding defendant's alleged

Form-Intake 2 (Rev. 4/05)        - 2 -

1   discriminatory conduct on or about MARCH 1, 2007

2                                        (DATE)

3   9.      The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter

4   (copy attached), which was received by me on or about ~~MARCH 30~~ MAY 2, 2007

5                                              (DATE)

6   10.     Plaintiff hereby demands a jury for all claims for which a jury is permitted:

7           Yes _X_     No ____

8   11.     WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,

9   including injunctive orders, damages, costs, and attorney fees.

10

11  DATED: 8/12/07

12                                   SIGNATURE OF PLAINTIFF

13

14  *(PLEASE NOTE: NOTARIZATION*          DONNA HINES

15  *IS NOT REQUIRED.)*               PLAINTIFF'S NAME

16                                    (Printed or Typed)

17

18

19

20

21

22

23

24

25

26

27

28

Form-Intake 2 (Rev. 4/05)              - 3 -



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Francisco District Office

350 The Embarcadero, Suite 500
San Francisco, CA 94105-1260
(415) 625-5601
TTY (415) 625-5610
FAX (415) 625-5609
TOLL FREE (800) 669-4000

Donna Hines
268 Bush Street  #3204
San Francisco, CA 94104

Re:    EEOC Charge Number: 550-2007-01072.
       **Donna Hines  v. CA Public Utilities Commission**

Dear Ms. Hines:

The Commission has received your request for a Notice of Right to Sue in the above referenced charge.
As a result of the request for Notice of Right to Sue, the EEOC has terminated its investigation and the
request has been forwarded to the U.S. Department of Justice for issuance.  That Agency will act on your
request as soon as possible and issue the Notice directly to you.

If you have any questions, please call Blake Wu, Investigator, at (415) 625-5671.

                                    On Behalf of the Commission:

5/2/07
_____                     _____
Date                                H. JOAN EHRLICH
                                    Director



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5068 8271

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

Ms. Donna Hines                         May 18, 2007
268 Bush St., #3204
San Francisco, CA  94104

Re:  EEOC Charge Against California Public Utilities Commission, et al.
     No. 550200701072

Dear Ms. Hines:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and the Commission has determined that it
will not be able to investigate and conciliate that charge within
180 days of the date the Commission assumed jurisdiction over the
charge and the Department has determined that it will not file any
lawsuit(s) based thereon within that time, and because you have
specifically requested this Notice, you are hereby notified that you
have the right to institute a civil action under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq.,
against the above-named respondent.

     If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.  If you cannot afford or are unable to retain an
attorney to represent you, the Court may, at its discretion, assist
you in obtaining an attorney.  If you plan to ask the Court to help
you find an attorney, you must make this request of the Court in the
form and manner it requires.  Your request to the Court should be
made well before the end of the time period mentioned above.  A
request for representation does not relieve you of the obligation to
file suit within this 90-day period.

     This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                         Sincerely,

                         Wan J. Kim
                    Assistant Attorney General
                       Civil Rights Division

          by    *Karen J. Ferguson*

                    Karen L. Ferguson
                 Supervisory Civil Rights Analyst
                 Employment Litigation Section

cc:  San Francisco District Office, EEOC
     California Public Utilities Commission, et al.

8/13/2007:10:12 AM

1

## PROOF OF SERVICE
### Page 1 of 1

2

3  **SUBJECT:  HINES V. CPUC/APPLING/AGUILAR/WULLENJOHN/DOES 1-30**
**Filing to U.S. District Court of N. California: Complaint of**
4  **Employment Discrimination and Other Unlawful Employment Acts**

5  I am employed in the Country of San Francisco, California. I am
6  over the age of 18 years and am not a party to the within
entitled cause; my business address is 601 Van Ness Avenue,
7  Suite E, San Francisco, CA 94102.  I have served the following
document(s):
8

9         **PLAINTIFF HINES' FILING TO U.S. DISTRICT COURT OF N.**
       **CALIFORNIA**

10

11  on the parties through their attorneys of record, by placing the
copies thereof in sealed envelopes addressed as shown below for
12  service as designated below:

13    (A) By Delivery:  I caused each envelope to be personally
     delivered to the designation indicated below, that same
14       day in the ordinary course of business.

15  **TYPE OF SERVICE**                  **ADDRESSEE**
16                                   **U.S. District Court of N.**
                                 **California**
17                                   **450 Golden Gate Ave.**
18                                   **16h Floor**
                                 **San Francisco, CA 94102**

19  I declare under penalty of perjury the foregoing is true and
20  correct and that this declaration was executed on August 13,
2007, in San Francisco, California.
21

22  _P.PATEL_
(Typed Name)                 (Signature)
23

24

25  
26

27

28

Monday, August 13, 2007

Donna Hines
Attorney Pro Se
268 Bush Street, # 3204
San Francisco, CA 94104

To: U.S. District Court of Northern California
San Francisco Office

Re: HINES v CALIFORNIA PUBLIC UTILITIES
COMMISSION/APPLING/AGUILAR/WULLENJOHN/DOES 1-30:
Filing Complaint of Employment Discrimination and Other Unlawful
Employment Practices

I, Donna Hines, am pro se attorney in the above-mentioned case. I am filing
herewith a complaint of employment discrimination and other unlawful
employment practices against Defendants, as listed above.

I certify and attest that to the best of my knowledge, information, and belief, that:

(1) the attached complaint is not being presented for any improper purpose, such
as to harass or to cause unnecessary delay or needless increase in the cost of
litigation;
(2) the claims, defenses, and other legal contentions have evidentiary support, or,
if specifically so identified, are likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery;
(3) the allegations and other factual contentions have evidentiary support, or if so
identified, are likely to have evidentiary support after a reasonable opportunity
for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if
specifically so identified, are reasonably based on a lack of information or
belief.

I hereby swear to this statement, under perjury of the laws of the United States of
America.

8/13/07
(DATE)

_Donna Hines_
(SIGNATURE)

DONNA HINES
(PRINT NAME)

COMPLAINT: HINES v CPUC/APPLING/
AGUILAR/WULLENJOHN/DOES 1-30

1

**Donna Hines**
**Attorney Pro Se and Plaintiff**
2       **268 Bush Street, #3204**
**San Francisco, CA 94104**
3       **Phone: (415) 205-3377**
**e-mail: Hines1@gmail.com**
4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                     **NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN FRANCISCO DIVISION**

11

12

**Donna HINES,**                    ) **Case No.:**
13                                   )
                                     )
       **Plaintiff,**                )
14                                   )
                                     )
       **vs.**                       )
15                                   )
**CALIFORNIA PUBLIC UTILITIES**      ) **COMPLAINT OF EMPLOYMENT**
16                                   ) **DISCRIMINATION AND OTHER**
**COMMISSION/AGUILAR/APPLING/**      ) **UNLAWFUL EMPLOYMENT**
17                                   ) **PRACTICES**
**WULLENJOHNN, DOES 1-30, Defendants**
18

19

20

21

22

23

24

25

26

27

28                      COMPLAINT: HINES v CPUC/APPLING

                        AGUILAR/WULLENJOHN/DOES 1-30:

                              PAGE 1 OF 33

**Table of Contents**

**Subject**                                                              **Page**

**General Information**                                                    2

**Subject Matter Jurisdiction**                                           2

**Venue**                                                                 3

**The Parties**                                                           3

**Conditions Precedent to Suit**                                          4

**Case Summary**                                                          6

**Retaliation and Progressive Decline in Plaintiff's**

**Performance Evaluations**                                               10

**Obstruction of Justice**                                                17

**Case Background/Statement of Fact**                                     17

**Cause of Action**                                                       27

  **Defendant CPUC**                                            28

  **Defendant Robert J. Wullenjohn**                            29

  **Defendant Dana S. Appling**                                 30

  **Defendant Arocles Aguilar**                                 31

  **Defendants DOES 1-30**                                      31

**Request for Relief**                                                    31

**Demand for Jury Trial**                                                 32

**Prayer for Relief**                                                     33

## GENERAL INFORMATION.

1. Plaintiff's address is:

    i.  268 Bush Street, # 3204

    ii.  San Francisco, CA 94104

    iii.  Phone: (415) 205-3377

2. Defendants are located at:

    i.  505 Van Ness Avenue

    ii.  San Francisco, CA 94102

## SUBJECT MATTER JURISDICTION.

3. Plaintiff files herewith a Title VII cause of action against Defendants.  Jurisdiction over Title VII actions lies with this court, pursuant to 42 U.S.C.A. § 2000e-5(f) (3) and Title 28 U.S.C, Sections 1404 and 1406.  A Title VII action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have occurred, in which the employment records relevant to the practice are maintained and administered, or in the judicial district in which the Plaintiff works.

4. Plaintiff believes that jurisdiction lies with the district court, since most of the unlawful employment practices relevant to this case have occurred in San Francisco. Plaintiff works in San Francisco and believes, and therein alleges, that employment records relevant to the practice are maintained and administered there.

5. District courts have jurisdiction over unlawful practices involving malice or conscious disregard as it relates to the deprivation of individuals' constitutionally-protected rights. Plaintiff believes, and therein alleges, that Defendants' have acted with malice or conscious disregard in depriving her of constitutionally-protected

COMPLAINT: HINES v CPUC/APPLING

AGUILAR/WULLENJOHN/DOES 1-30:

PAGE 2 OF 33

rights, in violation of the First, Fifth, and Fourteenth Amendments and 42 U.S.C.

2000e-2(n)(2)(D) and 42 U.S.C., Sections 1981 and 1983.

**VENUE**

6. Venue is proper in this District pursuant to 28 U.S.C. Sections 1404 and 1406, and 42 U.S.C.A. § 2000e-5(f) (3), since Defendants' principal office is located in this District and because a substantial portion of the events or deprivations that gave rise to this lawsuit occurred in this District.

**THE PARTIES**

7. Plaintiff has been employed by the California Public Utilities Commission (hence referred to as the CPUC, or "the Commission") since 2002.

8. Defendant California Public Utilities Commission (CPUC) is a person within the meaning of 42 U.S.C. section 2000e-(a) and an employer within the meaning of 42 U.S.C. Section 2000e(b).

9. The California Public Utilities Commission (CPUC) is a government agency of the State of California created pursuant to California law. The CPUC is responsible for regulating privately owned telecommunications, electric, natural gas, water, railroad, rail transit, and passenger transportation companies, in addition to authorizing video franchises.

10. Defendants employ over five hundred individuals. Defendants are responsible for establishing the compensation, terms, conditions, and other privileges of employment that bear upon the employment of Plaintiff.

11. Defendant Arocles AGUILAR is a person within the meaning of 42 U.S.C. section 2000e-(a).

12. Defendant Dana S. APPLING is a person within the meaning of 42 U.S.C. section 2000e-(a).

13. Defendant Robert J. WULLENJOHN is a person within the meaning of 42 U.S.C. section 2000e-(a).

14. Defendant DOES 1-30 are each persons, within the meaning of 42 U.S.C. section 2000e-(a).


**CONDITIONS PRECEDENT TO SUIT.**

15. Plaintiff has exhausted all applicable administrative remedies.  Plaintiff has executed timely filing of charges with the relevant agencies and/or Departments needed to bring this suit to the federal jurisdiction.

16. All conditions precedent to the filing of this suit have been satisfied.

17. On February 23, 2006, Plaintiff requested that the State Personnel Board (SPB) of the State of California hear the complaint of retaliation and discrimination, as it relates to Defendants.

18. On March 10, the Board agreed to review Plaintiff's charges under California Government Code, Section 8547 *et seq. (California* Whistleblower Protection Act), and 19683, as well as Title 2, California Code of Regulations, section 56 *et seq.*.

19. The case was heard on January 4, 2007.  On January 18, 2007, the Board issued its Notice of Findings to the case (06-0602-E), in which it dismissed Plaintiff's case, and notified her that her administrative remedies had been exhausted.

20. On or about July 9, 2006, Plaintiff first requested the California Department of Fair Employment and Housing (DFEH) to investigate her allegations regarding defendants' discriminatory conduct and unlawful employment practices.

21. On or about January 19, 2007, Plaintiff formally requested the DFeH to issue her a Right-to-Sue Letter.

22. On March 1, 2007, the DFEH notified Plaintiff that it had closed her case, since she had requested an immediate right- to-sue letter. The Department also notified Plaintiff of her right to obtain from the Equal Employment Opportunity Commission (EEOC) Federal notice of the right to sue.  Plaintiff requested said notice from the EEOC.

23. On March 28, 2007, the EEOC notified Plaintiff that they had drafted a Charge of Discrimination.  They also informed Plaintiff that in response to her request for an immediate right to sue notice, they would cease investigating this charge.

24. On March 30, 2007, the EEOC sent Plaintiff a letter, indicating that the charge was to be filed.

25. On May 2, 2007, the EEOC notified Plaintiff that it had received her request for a Notice of Right to Sue letter, and as a result, had terminated its investigation of her case. The Commission then informed Plaintiff that it had forwarded the request to the U.S. Department of Justice for issuance.

26. On May 18, 2007, the U.S. Department of Justice (DOJ, or "the Department") sent Plaintiff a letter notifying her of the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, against the above-named Defendants. The

COMPLAINT: HINES v CPUC/APPLING

AGUILAR/WULLENJOHN/DOES 1-30:

PAGE 5 OF 33

Notice-of-Right to Sue was issued, for the following reasons: (a) Plaintiff's filing

Charge No. 550200701072 with the EEOC; (b) EEOC determination that it would not

be able to investigate and conciliate the charge within 180 days of the date it assumed

jurisdiction over the charge; (c) DOJ's determination that it will not file any

lawsuit(s) based thereon within that time; and (d) Plaintiff's specific request for said

Notice.

**CASE SUMMARY**

27. This action is brought on by Plaintiff to request the Court to enforce provisions of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

("Title VII") and 42 U.S.C. §1981 and 1983.

28. Plaintiff is employed with the Division of Ratepayer Advocates (DRA), a department

within the CPUC responsible for advocacy on behalf of California taxpayers.

*29.* This case alleges Defendants' engaging in illegal employment practices, including but

not limited to denial of promotion, discrimination on the basis of race, retaliation and

hostile work environment, and obstruction of justice, in response to Plaintiff's

opposition to employment practices made unlawful under Title VII.

*30.* Plaintiff alleges that Defendants' practices have affected the compensation, terms,

conditions, and other privileges of her employment, and are in violation of Title VII,

42 U.S.C. Sections 2000e-2(a), (h), (k), and (n) (2)(D) and 42 U.S.C., Section 2000e-

3(a).

*31.* Plaintiff alleges that Defendant WULLENJOHN committed acts motivated in part or whole by retaliatory and racial animus, in violation of Title VII, 42 U.S.C. Sections 2000e-2(a), (m), (n) (2)(D), and 42 U.S.C. Section 2000e-3(a).

32. Plaintiff alleges that the acts complained of herein were either approved or condoned by Defendants APPLING and the CPUC, each of whom had the authority to make policy decisions and to direct a substantial portion of the Defendants' business.

33. Plaintiff alleges that the behavior of Defendants APPLING and CPUC has affected the compensation, terms, conditions, and other privileges of Plaintiff's employment, and has violated Title VII, 42 U.S.C. Section 2000e-2(a), (h), and (k).

34. Plaintiff alleges that behavior of Defendants' APPLING and CPUC is based on her good faith opposition to unlawful practices, and constitutes acts involving malice or conscious disregard as it relates to denial of her constitutionally-protected rights, in violation of 42 U.S.C, Section 703 (n) (2)(D) and 42 U.S.C., Sections 1981 and 1983.

35. The lawful exercise of Plaintiff's First Amendment rights focuses on her good faith attempts to remedy issues of malfeasance and deficient staff support, on a project to which she was assigned. The Project aims at preventing blackouts in California.

36. This project malfeasance resulted in a delay in effectively advocating on behalf of California taxpayers, and consists mainly of the failure to provide: (a) legal due diligence of draft energy contracts required between privately owned energy companies (i.e., generators) and investor-owned utilities regulated by the State of

California[1]; and (b) analysis of [energy] generation capability and availability, in times of peak consumer demand.

37. Plaintiff reported these deficiencies to DRA management, and requested that the Deputy Director WALSH facilitate a meeting, to help remedy problems.

38. Over the course of six months, Deputy Director WALSH did facilitate two meetings to address project deficiencies.

39. Deputy Director WALSH stated that problems in project operations were generic to the Division, and not unique to Plaintiff or to her project.

40. Deputy Director WALSH and other DRA management agreed that the staff assigned to the project were deficient in their project responsibilities. WULLENJOHH, Branch Manager CAUCHOIS and Legal Supervisor McKENZIE were among the staff copied on e-mails regarding this issue.

41. When Plaintiff reported these same deficiencies to WULLENJOHN, instead of correcting these deficiencies, he engaged in retaliatory acts. Over time, these acts would reveal a pattern of harassment, caustic, and abusive behavior predicated on racial animus and retaliatory sentiment.

42. In Plaintiff's Performance Appraisal Summary, dated January 3, 2006, WULLENJOHN commented that "Donna has in the past "flamed" her managers and co-workers in e-mails."

---

[1] Required as per conditions of Public Utilities Commission's Resource Adequacy project, Docket R.05-12-013.

43. During the course of the January 4, 2007 administrative hearing to hear Plaintiff's charge of retaliation, WULLENJOHN declared that he would **"beat the aggression"** out of her.

44. The next day, January 5, 2007, Defendants CPUC promoted WULLENJOHN to Branch Manager of the Division of Telecommunications.

45. On or about January 31, 2007, WULLENJOHN was promoted out of the Division of Ratepayer Advocates (DRA).

46. Plaintiff alleges that Defendants APPLING AND CPUC failed to take timely action to mitigate, remedy, and correct WULLENJOHN's discriminatory and retaliatory acts.

47. Plaintiff alleges that Defendants APPLING and CPUC condoned, authorized, and rewarded WULLENJOHN for said practices.

48. Plaintiff alleges in this action that Defendants APPLING and CPUC have engaged in employment practices on the basis of retaliatory motive, in denying her promotion to the position of Public Utilities Regulatory Analyst (PURA) IV/V.

49. Plaintiff alleges in this action that Defendants APPLING and CPUC have engaged in employment practices on the basis of retaliatory motive, in condoning or authorizing WULLENJOHN's retaliatory, malicious, and defamatory acts.

50. Plaintiff alleges that Defendants APPLING and the CPUC have pursued and continue to pursue policies of hiring, evaluation, promotion, and other employment practices that fail to meet the standards of a bona fide merit-based system, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., Section 2000e-2(h).

51. Plaintiff alleges that Defendants APPLING and the CPUC have pursued and continue to pursue policies of hiring, evaluation, promotion, and other employment practices that fail to meet the standards of a bona fide merit-based system. Plaintiff has reason to believe, and therein alleges, that lack of said system has a disparate impact on CPUC employees, on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., Section 2000e-2(h) and (k), and ((n)(2)(D).

52. Plaintiff has reason to believe, and therein contends, that Defendant APPLING admitted to inconsistencies in DRA management's standards for application of evaluation and disciplinary practices.

53. Plaintiff has reason to believe, and therein charges, that Defendant CPUC admitted to inconsistencies in its performance evaluation process, and in other employment practices.

54. Plaintiff alleges that Defendants have obstructed justice and engaged in acts or practices with malice or conscious disregard to deprive her of constitutionally-protected right, as per the First, Fifth, and Fourteenth Amendments, and in violation of 42 U.S.C, Section 2000e-2(n)(2)(D).

55. In sum, Plaintiff believes, and therein alleges, that the acts described herein violate fundamental principles of public policy barring employment discrimination and other unlawful employment practices.

**Retaliation and Progressive Decline in Plaintiff's Performance Evaluations**

56. The civil service process requires that State employees applying for competitive titles follow open and competitive civil service examination.

57. Plaintiff joined the CPUC in June 2002.

58. During Plaintiff's first year of employment with Defendant, she received three Performance Appraisal Summary reports, all with ratings of "outstanding".

**59.** Under the category "Relationships with People", Plaintiff was rated as "outstanding". In one of the evaluations, [then supervisor] LAFRENZ commented that Plaintiff worked very well with CPUC analysts, attorneys and Administrative Law Judges on her projects. LAFRENZ went on to note that Plaintiff appropriately voices her opinions and recommendations on the regulatory issues she works on, and accepts feedback from others (i.e., senior level staff, judges) on her work very well, and that [Plaintiff's] relationships with people are entirely professional and polite."

60. Plaintiff was promoted in October 2003. The CPUC justified Plaintiff's promotion based on her analytical work that saved California taxpayers a total of $1 billion in electricity rates.

61. In early 2004, Plaintiff transferred to the Division of Ratepayer Advocates. Soon thereafter, she began working on the Project.

62. Plaintiff served as Project Coordinator until March 2006.

63. In October 2004, Plaintiff received a performance evaluation, signed by Christopher DANFORTH and Scott CAUCHOIS, Supervisor and Branch Manager, respectively. The overall rating for the evaluation was "outstanding". The rating for "Relationships with People" was deemed "outstanding".

64. Comments include the following: "Plaintiff [Donna] has taken the initiative to keep management informed about workshops and other activities occurring in the [project] proceedings. She sends frequent e-mail updates to relevant persons...Donna has initiated discussion to improve team dynamics that will benefit the branch. ..She [Plaintiff] is well respected by her peers, and cordial and professional in all her interactions."

65. The October 2004 performance evaluation assessed Plaintiff's work on the same project and in the same Division that she worked on while under WULLENJOHN's supervision.

66. In October 2004, WULLENJOHN transferred to the Division of Ratepayer Advocates, as a supervisor.

67. In January 2006, Plaintiff received a performance evaluation, signed by WULLENJOHN. The evaluation consisted of three ratings of "Meets Expectations" and four ratings of "Exceeds Expectations". There was no overall rating. Under the category "Relationships with People", Defendant stated: "Donna has in the past "flamed" her managers and co-workers in e-mails."

68. Plaintiff believes, and therein alleges, that WULLENJOHN's performance evaluation is an adverse employment practice, since it is grounded in racial animus and retaliatory sentiment. Plaintiff rebutted the January 2006 evaluation.

69. Plaintiff alleges that WULLENJOHN's behavior created a pervasive and hostile work environment. By March 2006, Plaintiff had been suffering from anxiety and emotional distress for well over a year. The harassment and abusive behavior of

WULLENJOHN was so severe and unbearable that it would offend any member of the protected class of reasonable sensibilities.

70. To avoid further interaction with WULLENJOHN, Plaintiff resigned from the project.

71. Plaintiff has reason to believe, and therein alleges, that a fellow analyst (of African ethnicity) also complained to DRA management about WULLENJOHN's behavior.

72. In March, 2006, a White female analyst replaced Plaintiff as Project Coordinator. Plaintiff believes, and therein alleges, that this analyst is a Senior Utility Engineer– three levels above Plaintiff's PURA III grade.  That analyst left the project and the Division of Ratepayer Advocates around May, 2006.

73. Thereafter, an African male, PURA III, served as Project Coordinator.

74. In the fall of 2006, a White (Middle Eastern) male analyst replaced the PURA III analyst as Project Coordinator. Plaintiff believes, and therein alleges, that this analyst is a Senior Utility Engineer– three grades above Plaintiff.  Plaintiff has reason to believe, and therein alleges, that DRA also hired a consultant to work on the project.

75. Plaintiff believes, and therein alleges, that during the time when she worked on the Project, she performed work of another, more highly paid classification without being given the title.

76. Plaintiff believes, and therein alleges, that during the time when she worked on the Project, she performed work of another, more highly paid classification without being given the commensurate increase in pay.

77. During the time when Plaintiff worked on the Project, Plaintiff believes, and therein alleges, that Defendants APPLING and CPUC deprived her of employment opportunities and benefits commensurate with her performance.

78. Pursuant to Title 42, Section 2000e-2(a), these opportunities and benefits of which Plaintiff was deprived must be accorded to all employees regardless of race.

79. Pursuant to Title 42, Section 2000e-2(h), these opportunities and benefits of which Plaintiff was deprived must be accorded to all employees, based on a bona fide merit system.

80. Pursuant to Title 42, Sections 2000e-2(n) (2)(D) and 2000e-3(a), these opportunities and benefits of which Plaintiff was deprived must be accorded to all employees regardless of the decision to exercise their right to due process of law, as enabled by the Constitution.

81. During the time when Plaintiff worked on the Project, she believes and therein alleges that she merited promotion and commensurate increase in compensation.

82. Plaintiff is currently working on a project related to the audit of utility procurement, and is supervised by Joseph ABHULIMEN.

83. In or around June 2006, DRA Management asked Plaintiff to serve as Project Coordinator for this new project. Plaintiff believes, and therein contends, that she would be required to continue to perform work above grade, while deprived of promotion and increase in compensation based on merit. Plaintiff contends that said practice is illegal, in violation of Title VII, 42 U.S.C., Sections 2000e-2(a) and (h).

84. The staffperson assigned as Project Coordinator to the audit project is an Asian male. Plaintiff has reason to believe, and therein alleges, that he is a Senior Utility Engineer.

85. In May 2007, Plaintiff received a performance evaluation, signed by ABHULIMEN. The evaluation consisted of five ratings of "Meets Expectations" and two ratings of "Exceeds Expectations". No overall rating was provided. Under the category "Relationships with People", Plaintiff was rated as "meets expectations".

86. In that evaluation, ABHULIMEN wrote: "..Donna should strive to assume increased project leadership roles in order to adequately prepare herself for promotion to the PURA IV position."

87. Plaintiff rebutted this statement that links promotion with "assumption of" project leadership roles. Plaintiff cited the statement and the reason for denial of promotion as incorrect, misleading, and pretextual, since she had served as Project Coordinator (from 2004-06) under WULLENJOHN's supervision.

88. Plaintiff notes that ABHULIMEN acknowledged in the evaluation that "Donna is currently taking a major lead in developing a benchmark model to be used by all three IOUs [utilities] for their hour and day-ahead power transactions." This statement contradicts the statement linking promotion to Plaintiff's assumption of "project leadership roles". Plaintiff cites this as pretextual in Defendants' denial of promotion.

89. Plaintiff alleges that Defendants APPLING and CPUC have required her to perform work of another, more highly classified and paid staff, without being given the title

and commensurate compensation indicative of said performance, in violation of Title 42, Sections 2000e-2(a) and (h).

90. Finally, as it relates to ratings on promotional examinations, Plaintiff notes the following:

91. In April 2005, Plaintiff took the PURA IV exam. On a scale of 1-5, with one as highest rating, Plaintiff scored a "2". She was deemed eligible to apply for jobs at this level. Plaintiff applied for several job openings both in DRA and in other Divisions of the Commission.

92. In July 2006, Plaintiff took the PURA V exam, and was rated as a "3". She was deemed eligible to apply for jobs at this level, and did so. Plaintiff applied for several job openings both in DRA and in other Divisions of the Commission.

93. Plaintiff retook the PURA IV exam in June 2007, and was downgraded to a rating of "3". Plaintiff alleges, and cites this herein, as evidence of progressive decline in evaluation ratings, as it relates to Defendants' alleged retaliatory actions.

94. Plaintiff alleges Commission's retaliatory action, and failing or refusing to engage in bona fide, consistent and merit-based system in hiring, evaluation, promotion, and other employment decisions.

95. Plaintiff alleges disparity in Commission employment decisions, and a concomitant disparate impact on the basis of race, due to lack of a bona fide merit-based system for evaluating, hiring, and promoting staff.

96. Because of Defendants' actions in denial of promotion, Plaintiff has suffered, and has continued to suffer losses of wages/salary and other employee compensation and benefits in an amount that is currently un-ascertained.

## OBSTRUCTION OF JUSTICE (DEFENDANTS AGUILAR, APPLING)

97. On February 23, 2006, Plaintiff filed a complaint with California's State Personnel Board, alleging retaliation and discrimination by the Commission and WULLENJOHN.

98. On March 10, 2006, the Board agreed to hear Plaintiff's complaint, assigned as Case 06-0602-E.

99. During the course of case investigation, several non-party individuals informed Plaintiff that Commission staff ordered/directed them not to answer Plaintiff's Request for Written Statement.

100.   Plaintiff has reason to believe that these non-party individuals would have voluntarily responded to Request for Written Statements, if not for the "directives" of Commission staff prohibiting them from doing so.

## CASE BACKGROUND/STATEMENT OF FACT

Educational background

101.   Plaintiff has a Masters in Business Administration, and has taken additional post-graduate courses in financial econometrics and risk management.

Employment with Defendant

102. Plaintiff, an African-American female, joined the California Public Utilities Commission in June, 2002 as a Public Utilities Regulatory Analyst (PURA). Analysts are responsible for conducting technical and analytical research work as well as consultative and advisory services in the areas of economics, finance, and policy.

103. Consistent with state administrative requirements, Plaintiff was placed on probation during her first year of employment.  During this time, Plaintiff received three[2] evaluations, with overall ratings of "outstanding".  Under the category "Relationships with People", Plaintiff received ratings of "outstanding".

104. In October, 2003, Plaintiff was promoted to Public Utilities Regulatory Analyst, Level III. Defendants CPUC justified Plaintiff's promotion due to her analytical work that saved California taxpayers a total of $1 billion in electricity rates.

105. In January 2004, Plaintiff transferred to the Division of Ratepayer Advocates (DRA), a division of the CPUC responsible for consumer advocacy.

106. In or around February, 2004, DRA Management assigned Plaintiff as Project Coordinator to the Resource Adequacy Project (the "Project").  Plaintiff served as Project Coordinator until March 2006.

[2] Mandatory for recent staff hires and/or promotions.

107.　At that time, duties were undefined and ambiguous. Basic duties involved project management, making policy recommendations and reporting to DRA management regarding progress in staff proceedings.

108.　At that time, an attorney (OBIORA) and an analyst (SMITH) were also assigned to the Project. Lawyers and analysts are co-assigned to projects; analysts generally write policy recommendations for management review. Legal staff assist in drafting policy recommendations, presenting testimony, and submitting briefs before the CPUC.

109.　In terms of management, the Legal division is separate from DRA. Legal staff report directly to Legal supervisors; analysts report to a DRA supervisor responsible for project operations. Branch Managers manage DRA (but not Legal) supervisors. Legal supervisors report directly to DRA's Director.

110.　The main objective of the project is to order regulated utilities to buy enough energy to "keep the lights on" during peak times of the year, i.e., prevent blackouts. Generators want to sell as much energy to the utilities, in order to make huge profits. They lobby the Commission to order the utilities to do so. Utilities enter into long-term contracts for much of their energy demand. Contract terms dictate what time and for how long energy is available. Engineering feasibility studies determine the physical sites where energy is needed. In this project, generators proposed several draft contracts that they wanted the Commission to approve.

111.　Plaintiff requested due diligence and legal assistance in reviewing: (1) contracts signed by the Department of Water Resources during California's 2001-02 energy

crisis; and (2) draft contracts proposed by generators for future utility purchases under this [Resource Adequacy] Project.

112.    Plaintiff needed OBIORA to review these contracts, to ensure that taxpayers got a fair deal, and that generators were held to certain performance standards. Plaintiff needed MAZY to review the feasibility proposals underway, and to provide comment on if they were consistent with engineering norms or standards. Neither staff reviewed these policy issues.

113.    In July, 2004, DRA was required to file briefs on policy issues pertaining to the Project. The determination of the type and quantity of energy contracts eligible under this project would directly impact utility rates of California taxpayers.

114.    Had the contracts not been approved, taxpayers could have paid higher rates for electricity services.

115.    Beginning in June, 2004, Plaintiff asked OBIORA to provide due diligence/review of draft long-term contracts for provision of energy. As of late July, OBIORA had not responded to Plaintiff's request. Plaintiff then resorted to reviewing the contracts, and in turn, drafted policy recommendations on this policy issue.

116.    Problems with project operations continued. After some months, Plaintiff asked (then) Deputy Director WALSH to facilitate a meeting, to remedy these problems.

117.    Deputy Director WALSH agreed to do so, and acknowledged ambiguity re coordination between staff. Most importantly, she noted that the "concerns you raise are generic and not unique to you or your particular assignments."

118.    In or around late September, 2004, WULLENJOHN transferred to the Division of Ratepayer Advocates, as a supervisor.

119.    Around late September/early October 2004, a meeting was held to discuss these issues. Deputy Director WALSH, WULLENJOHN, CAUCHOIS, Plaintiff, and SMITH attended the meeting.  OBIORA did not attend the meeting.

120.    Following the meeting, WULLENJOHN said that he would speak with OBIORA regarding lack of responsiveness to Plaintiff's project requests.  On or around November 1, WULLENJOHN met with OBIORA, privately.

121.    Following the meeting, WULLENJOHN spoke with Plaintiff, and indicated that he thought the operational problem with OBIORA was due to Plaintiff's "personality".

122.    Despite the assessment of Deputy Director WALSH that operational problems were generic to the Division, and "not attributable to [Plaintiff] or to [Plaintiff's] project", WULLENJOHN blamed Plaintiff for legal's non-responsiveness to Project operations.

123.    Since it was early in their work relationship, Plaintiff demurred on this issue, hoping to alleviate the situation.

124.    In Fall, 2004, another series of Commission-wide project workshops took place. Workshop participants proposed a draft contract template for discussion, comment, and eventual approval by Commission decision-makers. Plaintiff reiterated the request for legal due diligence, to review terms and conditions of draft contract, to ensure California taxpayers would not overpay for electricity services.

125.    Around January 2005, Plaintiff again raised the issue of OBIORA'S non-responsiveness on project issues.

126.    In early January 2005, Anthony MAZY was assigned to the Project, replacing SMITH as project analyst. MAZY was assigned to analyze feasibility proposals developed for the Project.  Over the course of the two months of his assignment, MAZY failed to provide this analysis.

127.    In an e-mail, WULLENJOHN admitted that MAZY was non-responsive to his project responsibilities.

128.    WULLENJOHN held a private meeting with MAZY.  After the meeting, WULLENJOHN indicated that the problem of MAZY'S non-responsiveness lay with Plaintiff.

129.    After some two months of non-responsiveness from both MAZY and OBIORA, Plaintiff again asked the Deputy Director WALSH to facilitate a meeting, to remedy operational problems.

130.    Deputy Director WALSH agreed to chair a meeting. WALSH also noted that "we are all in agreement that [OBIORA] has not provided the needed support." Branch Manager CAUCHOIS, WULLENJOHN, ABHULIMEN (MAZY'S supervisor), and Legal supervisor MCKENZIE were copied on this e-mail.

131.    Despite Deputy Director's assessment, WULLENJOHN blamed Plaintiff for the non-responsiveness of both OBIORA and MAZY, stating "..today I plan to discuss with Donna [Plaintiff] privately that though her recent experience with team members not being responsive is their responsibility, it is also the responsibility of the person

doing the asking." This statement underscores WULLENJOHN'S modus operandi of holding Plaintiff responsible for work deficiencies of other staff. In doing so, he implicitly expanded the scope of work for which she would be held responsible, thus changing the terms and conditions of her work.

132.   A meeting in late Feb/early March 2005, to help correct project deficiencies. WALSH, CAUCHOIS, MCKENZIE, MAZY, ABHULIMEN, WULLENJOHN and Plaintiff attended the meeting.

133.   In an e-mail dated March 4, MAZY summarized the meeting, and noted WALSH's ferocity in "...finding fault with everyone in the room other than Ms. Hines [Plaintiff].."

134.   In early March, OBIORA was reassigned to another project, at his request. Plaintiff has reason to believe, and therein alleges, that no disciplinary action was taken against him. Another attorney [PAULL] was assigned to the Project.

135.   PAULL questioned DRA's capability and need to provide due diligence of the contracts, and stated that she assumed other Legal staff in the Commission had reviewed the contracts.

136.   In July 2005, Supervisor MCKENZIE commented that operational problems could be attributed to lack of clarity from DRA management on scope and objectives of Plaintiff's project work.

137.   In or around August, 2005, Legal supervisor MCKENZIE admitted that to the best of her knowledge, no one in the Commission had reviewed or provided due diligence of draft contracts.

138.   During this time, WULLENJOHN's behavior towards Plaintiff continued to be abusive, oppressive, and grounded in retaliatory sentiment and racial animus.

139.   On a regular basis, Wullenjohn chastised, threatened, and held Plaintiff responsible for project communications and/or activity.  Much of key communication on project issues took place in off-line e-mails, debriefing meetings, and conversations between DRA and Legal management -- communications of which Plaintiff was unaware.

140.   On a regular basis, WULLENJOHN demonstrated his modus operandi, which translates as: "If I tell you to jump, the only thing you need ask is "How high?"  And he frequently ordered: "If you have a problem, you come to me!", thus implying that Plaintiff had no recourse other than the treatment WULLENJOHN meted out to her. On at least one occasion, WULLENJOHN used offensive gestures towards Plaintiff, i.e., "flipping the bird".

141.   In July 2005, during the midst of a project deadline, Wullenjohn approached Plaintiff and aggressively demanded that they talk "right there, right now!!"  During the course of the conversation, WULLENJOHN told Plaintiff that she was his "guinea pig", and again intimated that he could treat her however he wished, with impunity.

142.   This pattern of behavior would adversely impact on Plaintiff's job performance, and changed the terms, conditions, and scope of Plaintiff's job.  Plaintiff noted the disparity between WULLENJOHN's working relationship with her, relative to his interaction with her fellow colleagues.

143.   WULLENJOHN supervised a staff of approximately six analysts.  A White female (PURA III), an Asian female (PURA III/IV), a White male (PURA III), a Black male (PURA III), and Plaintiff (African-American, PURA III), and a Senior Utility Engineer (male, of Middle Eastern descent).

144.   Plaintiff asked colleagues supervised by WULLENJOHN if they'd had problems with him.  Only one analyst (PURA III, male of African descent) indicated that he had.  The situations he described rang familiar to Plaintiff...WULLENJOHN'S abusive, hostile, bullying behavior, and his abuse of authority, consistent with the behavior that Plaintiff experienced.

145.   WULLENJOHN also -- to coin his term --"flamed" a fellow supervisor (of African descent), saying "Let's get our f---ing act together!"

146.   By Fall, 2005, the work environment was increasingly chaotic and without direction.  WULLENJJOHN admitted to confusion in his ability to supervise the flow and organization of project work.  His reaction was to increasingly vent his frustration --bullying behavior towards Plaintiff-- to try and "correct" the situation.

147.   Further, his willingness to remedy and prevent other staff (i.e., PAULL) from abusive and behavior towards Plaintiff remained unchecked.

148.   His reaction to such abuse was "Brush it off"! Move on! You make a big deal out of nothing..."

149.   Yet, when non-productive staff assigned to the Project raised spurious complaints, WULLENJOHN was all too eager to fault Plaintiff.

150.    Only after Plaintiff filed an internal complaint (February 2006) did
        WULLENJOHN attempt face-saving measures, advising PAULL that we need to be
        sensitive to Plaintiff's concerns.

151.    By February, 2006, working conditions became so fractious, intolerable, and
        unreasonable that Plaintiff quit the assigned project.

152.    Plaintiff was assigned to another project. WULLENJOHN continued to oversee
        Plaintiff on administrative matters.

153.    On February 23, Plaintiff filed a charge of retaliation with the California State
        Personnel Board.

154.    In June, 2006, Plaintiff was assigned to a new supervisor, ABHULIMEN.  The
        working relationship between Plaintiff and WULLENJOHN ends.

155.    In or around September 5, 2006, Defendants sent Plaintiff a copy of a document
        outlining duties and expectations of DRA analysts.

156.    In or around June, 2006, Defendants CPUC issued a revised policy memo to
        provide guidelines on employee performance evaluations.

157.    On January 4, 2007, the State Personnel Board (SPB) heard Plaintiff's case.

158.    During the course of that hearing, WULLENJOHN cited and discussed passages
        of e-mail text that he alleged substantiated the "flaming" comment included in
        Plaintiff's performance evaluation.

159.    While delivering this portion of his (narrative) testimony, WULLENJOHN grew
        increasingly agitated, to the point where he told Plaintiff that he would **beat the
        aggression**" out of her.

160.    The following day, January 5, 2007, the CPUC promoted WULLENJOHN to the position of Branch Manager, in the Division of Telecommunications.

161.    On January 18, 2007, the SPB notified Plaintiff that it had dismissed her case, and that her administrative remedies had been exhausted.

162.    On May 18, 2007, the U.S. Department of Justice notified Defendants CPUC that it had issued Plaintiff's a Federal Right to Sue Notice.

163.    On or about June 4, 2007, Defendants CPUC issued to staff (via Intranet) updated memos on its anti-retaliation, equal employment opportunity, and unlawful harassment policies.

164.    In or around June 15, Defendants CPUC conducted a sample analysis of employees' personnel files, for review of its compliance with performance evaluation requirements, Defendants admitted that some variance (and therein disparity) on the frequency and standards of performance evaluation measures for CPUC employees, may exist.


**CAUSE OF ACTION**


**Plaintiff alleges upon information and belief that the acts complained of in this suit concern Defendants':**

165.    Continuous failure to promote, in violation of Title VII of the Civil Rights Act of 1964, as amended, Title 42, Section 2000e-2(a) and Section 2000e-2(h), and 42, Section 1981 and 1983.

166. Hostile working environment, harassment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, Title 42, Section 2000e-2(a) and 42, Section 1981 and 1983.

167. Intentional infliction of emotional distress, in violation of Title VII of the Civil Rights Act of 1964, as amended Title 42, Section 2000e-2(a)

168. Obstruction of justice, in violation of Title VII of the Civil Rights Act of 1964, as amended Title 42, Section 2000e-2(n) (2) (D) and Title 42, Sections 1981 and 1983...

**Defendants' conduct is discriminatory with respect to the following:**

169. My race or color.

170. Lawful exercise of constitutionally provided First Amendment rights.

171. Lawful exercise of constitutionally provided Fifth Amendment rights

172. Lawful exercise of constitutionally provided Fourteenth Amendment rights

173. Lawful exercise of constitutionally provided rights, pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C., Sections 1981 and 1983.

**Defendant California Public Utilities Commission**

174. Plaintiff references herein paragraphs 8-10, 29-30, 32-34, 44, 46-51, 53-54, 75-77, 83, 88-89, and 163-164. The basic facts surrounding my claims of discrimination, harassment, and retaliation among other ways, by:

**175.** failing or refusing to apply consistent, transparent, and bona fide criteria in performance evaluation, promotion, hiring, and other employment practices, in violation of Title 42, U.S.C.A., Section 2000e-2(a), (h), and (k)

176. failing or refusing to take appropriate action to remedy the effects of discriminatory and retaliatory treatment, and hostile acts perpetuated by Defendant

Robert J. WULLENJOHN, in violation of the Civil Rights Act of 1964 Section 701 et seq., Title 42 U.S.C.A Section 2000e-2(a); and

177.  engaging in acts, with malice or conscious disregard to Plaintiff's federally protected rights, directly or indirectly, that constitute obstruction of justice and violation of U.S.C.A., Title 42, Sections 2000e-2(n)(2)(D), 2000e-3(a) and 42 U.S.C, Sections 1981 and 1983.

**Defendant Robert J. WULLENJOHN**

178.  Plaintiff references herein paragraphs 13, 29-31, 41-45, 54, 68-69, 131, 138-142, 145, and 158-160. The basic facts surrounding my claims of discrimination, harassment, and retaliation among other ways, by:

179.  subjecting Plaintiff to harassment based on racial animus and for retaliatory motive while she was under his supervision (November 2004-March 2006), and adversely impacting Plaintiff's ability to perform her duties, therein affecting the compensation, terms, conditions, and privileges of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., Sections 2000e-2(a) and (m) and Section 2000e-3(a);

180.  retaliating against Plaintiff for engaging in constitutionally-protected First Amendment activity, and in violation of 42 U.S.C.A., Section 2000e-(2)(n)(2)(D)

181.  threatening or promising to effectuate physical violence against Plaintiff, under oath and during the course of formal testimony in a State administrative hearing, in violation of 42 U.S.C.A., Section 2000e-(2)(n)(2)(D); and

182. harassing and intentionally inflicting emotional distress on Plaintiff, in violation of 42 U.S.C.A. Section 2000e-2(a) and 2000e-2(n) (2) (D).

**Defendant Dana S. APPLING.**

183. Plaintiff references herein paragraphs 12, 29-30, 32-34, 46-52, 54, 75-77, 83, 88-89, 99-100, and 163-164. The basic facts surrounding my claims of discrimination, harassment, and retaliation among other ways, by:

184. failing or refusing – on a continuous basis -- to engage in bona fide, consistent and merit-based criteria, in hiring, evaluation, promotion, and other employment decisions, in violation of 42 U.S.C, Sections 2000e-2(a) and (h) and 42 U.S.C., Sections 1981 and 1983;

185. failing or refusing to promote Plaintiff, due to retaliatory motives, in violation of 42 U.S.C, Section 2000e-2(a) and (h), (n)(2)(D), and Section 2000e-3(a);

186. failing or refusing – on a continuous basis -- to take appropriate action to remedy the effects of discriminatory, retaliatory and hostile acts committed by Defendant Robert J. WULLENJOHN, in violation of the Civil Rights Act of 1964 Section 701 et seq., 42 U.S.C.A Section 2000e-2(a).

187. engaging in acts, with malice or conscious disregard to employee's federally protected rights, directly or indirectly, that constitute obstruction of justice and violation of Title 42 U.S.C.A., Section 2000e-(2)(n)(2)(D), and of Sections 1981 and 1983 of the U.S.C.;

188. intentional infliction of emotional distress, in violation of Section 2000e-(2)(n)(2)(D)

**Defendant Arocles AGUILAR**

189.    Plaintiff references herein paragraphs 11, 54, 99-100. The basic facts surrounding

my claims of discrimination, harassment, and retaliation among other ways, by:

190.    engaging in acts, with malice or conscious disregard to Plaintiff's federally

protected rights, that constitute obstruction of justice and violation of Sections 1981

and 1983 of the U.S.C.;, in violation of Section 2000e-(2)(n)(2)(D)

**Defendants DOES 1-30:**

191.    Plaintiff references herein paragraphs 14, 54, 99-100. The basic facts surrounding

my claims of discrimination, harassment, and retaliation among other ways, by:

192.    engaging in acts, with malice or with conscious disregard to employee's federally

protected rights, that directly or indirectly, that constitute obstruction of justice and

violation of in violation of Section 2000e-(2)(n)(2)(D) and Sections 1981 and 1983 of

the U.S.C.;

193.    engaging in acts with malice or with conscious disregard to employee's federally

protected rights that constitute denial of due process of appeal, in violation of Section

2000e-(2) (n)(2)(D) and of Plaintiff's constitutionally-protected Fifth Amendment

rights.

**REQUEST FOR RELIEF**

Pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C., Section 2000e-5(g),

Plaintiff requests that the Court:

194.    enjoin Defendants from engaging in discriminatory employment policies and

practices in violation of Title VII and require that Defendants develop a Court-

COMPLAINT: HINES v CPUC/APPLING

AGUILAR/WULLENJOHN/DOES 1-30:

PAGE 31 OF 33

approved plan for establishing a bona fide, open, and transparent merit-based system for promoting Commission staff;

195.   punish or discipline any person found guilty of said counts liability, duty, penalty, or punishment provided by any present or future law of any State;

196.   punish or discipline any person found guilty of acts or practices depriving Plaintiff of constitutionally-protected rights;

197.   award compensatory and punitive damages and fine Defendants for said practices and policies;

198.   award remedial relief and equitable remedies, including but not limited to back pay with interest to Plaintiff, due to Defendants' discriminatory conduct; and

199.   grant such further relief as the Court may deem just, together with the costs and disbursements in this action.

200.   Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained or upon proof at the time.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial of this matter by jury.

WHEREFORE, Plaintiff requests that this Court enter judgment and grant such relief as may be appropriate, including compensatory damages according to proof and monetary damages to compensate for emotional distress suffered by the Plaintiff.

DATED: 8/13/07

**SIGNATURE OF PLAINTIFF**

DONNA HINES

**PLAINTIFF'S NAME**

**(Printed or Typed)**