**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONNA HINES,

       Plaintiff,

   v.

CALIFORNIA PUBLIC UTILITIES
COMMISSION, et al.,

       Defendants.
_____/

No. C 07-4145 CW

ORDER GRANTING
DEFENDANTS' MOTIONS
TO DISMISS

    Defendants California Public Utilities Commission (CPUC),
Arocles Aguilar, Dana Appling and Robert Wullenjohn move to dismiss
Plaintiff Donna Hines' claims against them.  Defendants California
State Personnel Board (SPB), Gregory Brown and Floyd Shimomura move
separately to dismiss her claims against them.  Plaintiff opposes
both motions.  The matter was taken under submission on the papers.
Having considered all of the papers submitted by the parties, the
Court grants Defendants' motions.

BACKGROUND

I.  Discrimination and Retaliation Claims

    The following facts are alleged in the amended complaint.

United States District Court
For the Northern District of California

Plaintiff is an African-American woman.  She began working for CPUC in June, 2002 and continues to work there today as a Public Utilities Regulatory Analyst (PURA).  "Analysts are responsible for conducting technical and analytical research work as well as consultative and advisory services in the areas of economics, finance, and policy."  Am. Compl. ¶ 145.  According to Plaintiff, her early performance evaluations were uniformly positive and she was promoted in October, 2003.

In early 2004, Plaintiff was transferred to the Division of Ratepayer Advocates (DRA), where she began working on the Resource Adequacy Project.  She soon became the coordinator of this project, which sought to prevent blackouts in California.  Both analysts and attorneys were assigned to the project.  Analysts generally wrote "policy recommendations for management review," while attorneys assisted in "drafting policy recommendations, presenting testimony, and submitting briefs before the CPUC."  Id. ¶ 149.  As the project coordinator, Plaintiff's duties involved "project management, making policy recommendations and reporting to DRA management regarding progress in staff proceedings."  Id. ¶ 148.  In or around early October, 2004, Defendant Wullenjohn was transferred to the DRA and became Plaintiff's supervisor.

Even prior to Mr. Wullenjohn's transfer, Plaintiff had begun to identify problems with the project related to what she characterizes as "malfeasance and deficient staff support."  Id. ¶ 56.  The "malfeasance" consisted of the failure of two project members to complete their tasks in a satisfactory manner.  Specifically, one attorney did not respond to Plaintiff's request that he perform "due diligence and legal assistance" by reviewing

**United States District Court**
For the Northern District of California

drafts of energy contracts to ensure that "taxpayers got a fair deal." Id. ¶¶ 152, 153. In addition, one analyst did not respond to Plaintiff's request that he analyze "feasibility proposals" and comment on whether they were "consistent with engineering norms or standards." Id. ¶ 153. As a result, Plaintiff had to perform much of this work herself. These two team members also failed to coordinate their efforts with Plaintiff and other project members, leading to inefficiency and oversights that Plaintiff maintains negatively impacted the public interest.

Plaintiff raised her concerns about her co-workers' poor performance with upper-level DRA management. She was told that she had identified problems that were not limited to her project, but rather were common throughout the division. Shortly after Mr. Wullenjohn began as Plaintiff's supervisor, a senior manager held a meeting to discuss the issues Plaintiff had raised.

After the meeting, Mr. Wullenjohn allegedly spoke with Plaintiff and told her that he thought some of the conflict between her and the other project members was attributable to her own actions. Plaintiff claims that this discussion was the beginning of a pattern whereby Mr. Wullenjohn continually held her responsible for the shortcomings of other staff members. Mr. Wullenjohn allegedly began to harass and abuse Plaintiff, chastising and threatening her. While doing this, he exhibited an attitude that Plaintiff maintains "translates" as, "If I tell you to jump, the only thing you need ask is 'How high?'" Id. ¶ 181. He frequently ordered Plaintiff, "If you have a problem, you come to me!" Id. On one occasion, he demanded that Plaintiff talk with him "right there, right now!!" and told Plaintiff that he was using

3

her as a "guinea pig." Id. ¶ 182. "On at least one occasion, Defendant Wullenjohn used offensive gestures towards Plaintiff, i.e., 'flipping the bird.'" Id. ¶ 181.

Plaintiff claims that Mr. Wullenjohn's treatment of her was done in retaliation for her complaints to management about her co-workers. She also claims that it was based on racial animus. To support this latter claim, she alleges that she asked various colleagues if they had experienced problems working with Mr. Wullenjohn. The only employee to complain of the type of "abusive, hostile, bullying behavior" Plaintiff had experienced was African-American as well. Id. ¶ 185.

Plaintiff's problems with Mr. Wullenjohn culminated in her January, 2006 performance evaluation, which Mr. Wullenjohn completed. In the evaluation, Plaintiff received the rating, "exceeds expectations" in four categories and the rating, "meets expectations" in three categories. Plaintiff claims that, in her previous evaluations, she had received the rating, "oustanding" in all categories. In addition, under the category, "relationships with people," Mr. Wullenjohn wrote, "Donna has in the past 'flamed' her managers and co-workers in e-mails." Id. ¶ 89. Plaintiff maintains that the evaluation constitutes an adverse employment action taken in retaliation for her complaints and was "grounded in racial animus." Id. ¶ 90.

Unable to continue working under such conditions, in February, 2006, Plaintiff asked to be reassigned to a different project. Her request was granted, but she continued to report to Mr. Wullenjohn on administrative matters until June, 2006, when she was assigned a new supervisor.

Plaintiff also claims that, during her time as the project coordinator, she performed the work of an employee with a higher civil service grade classification than her own PURA III grade, but did not receive the wages to which such an employee would be entitled.  She asserts that this was tantamount to being wrongfully denied a promotion.  She also alleges that she took civil service exams to qualify for classification as PURA IV and PURA V, each of which is a higher rank than PURA III.  Even though she earned a score that made her eligible to apply for several positions, her applications for these positions were rejected.  She asserts that this is because CPUC lacks a "bona fide merit-based system for evaluating, hiring, and promoting staff," which results in a disparate impact on African-American employees.  Id. ¶ 122.  In addition, when Plaintiff re-took the PURA IV exam at a later date, she was "downgraded to a rating of '3'."  Id. ¶ 120.  She maintains that this is further evidence of retaliation against her.

II.   Obstruction of Justice

On February 23, 2006, Plaintiff filed a complaint of retaliation with the California State Personnel Board (SPB).  During the course of the SPB's investigation, Defendant Aguilar, an attorney for CPUC, allegedly directed several of Plaintiff's co-workers not to answer Plaintiff's "Request for Written Statement," which she had served on them in connection with her SPB case.  Mr. Aguilar allegedly did this in collusion with Defendant Appling[1] to deter Plaintiff's co-workers from serving as witnesses.

---

[1]Although the complaint does not specify Ms. Appling's position or provide detailed information about her role in the events giving rise to this lawsuit, she appears to be an administrator with authority over personnel matters.

**United States District Court**
For the Northern District of California

1    The SPB conducted an investigation into Plaintiff's

2   retaliation complaint and held an informal hearing on January 4,

3   2007.  On January 18, it issued a notice of its findings and

4   dismissed Plaintiff's case.[2]  In doing so, it found that Plaintiff

5   had not established by a preponderance of the evidence a claim

6   under the California Whistleblower Protection Act because she had

7   not been subjected to an adverse employment action.

8    Plaintiff claims that the SPB, acting through Defendant

9   Shimomura, its Executive Officer at the time, unlawfully failed to

10  provide her with the right-to-sue letter she purportedly needed in

11  order to file a lawsuit in state court.  In addition, she claims

12  that, after she filed the present lawsuit, the SPB, acting through

13  Defendants Shimomura and Brown[3] and in conjunction with CPUC,

14  "destroyed, or allowed to be destroyed," certain unspecified "key

15  elements of evidence and/or information" relevant to Plaintiff's

16  claims.  Id. ¶¶ 142, 141.

17  III. Plaintiff's Pursuit of Administrative Remedies

18   As noted above, Plaintiff pursued a claim with the SPB.

19  Although she asserts that this claim was based on both

20  discrimination and retaliation, the SPB's decision addresses only a

21  retaliation claim based on California's Whistleblower Protection

22  ───────────────────

23  [2]The Court takes judicial notice of the contents of the SPB
    decision, although not of the truth of the facts stated therein.

24  See Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048,
    1052 (9th Cir. 2007) (court may take judicial notice of facts not

25  reasonably subject to dispute, either because they are generally
    known, are matters of public record or are capable of accurate and

26  ready determination).  The decision is attached as Exhibit A to
    Defendants' request for judicial notice (Docket No. 52).

27  [3]Although the complaint does not explicitly say as much, the
    SPB's notice of findings confirms that Mr. Brown is the

28  Administrative Law Judge who presided over Plaintiff's case.

Act.  It does not discuss any allegation that Plaintiff was discriminated against on the basis of her race.

The complaint also alleges that, after Plaintiff's SPB case was closed, she filed complaints both with the California Department of Fair Employment and Housing and with the Equal Employment Opportunity Commission.  Both agencies issued Plaintiff right-to-sue letters.  No documents from the proceedings before these agencies have been presented to the Court, but Plaintiff alleges that her complaints included the claims of discrimination and retaliation raised in the present action.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  See Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007).

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  Although the court is generally confined to a consideration of the allegations in the pleadings, the court may also consider matters of which judicial notice may be taken.  Doing so does not convert the motion into one for summary judgment.  United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 1993).  Unlike a motion for

United States District Court
For the Northern District of California

summary judgment, the court will deny a motion to dismiss even where the plaintiff is unable to demonstrate that material facts are in dispute.

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I.   Proper Defendants

Plaintiff asserts Title VII claims not just against her employer, CPUC, but against the individual Defendants as well. However, Title VII places liability for discriminatory conduct on the employer; individual employees may not be named as defendants. Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993).  Therefore, Plaintiff's Title VII claims against Defendants Aguilar, Appling, Wullenjohn, Brown and Shimomura are dismissed. This dismissal is with prejudice because any amendment to name these individuals as Title VII Defendants would be futile.

In addition, Plaintiff asserts claims against all defendants for violations of 42 U.S.C. §§ 1981, 1983 and 1985.  However, only individuals, not States or state agencies, may be sued under these statutes.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Mitchell v. L.A. Cmty. Coll. Dist., 861 F.2d 198 (9th Cir.

United States District Court
For the Northern District of California

8

1988).  Further, individuals may not be sued in their official capacities as state employees or officers under these statutes.  See id.  Therefore, Plaintiff's claims under §§ 1981, 1983 and 1985 against CPUC and the SPB, as well as her claims under these statutes against the individual defendants in their official capacities, are dismissed.  This dismissal is also with prejudice because any amendment would be futile.

II.  Race Discrimination

    A.  Discriminatory Performance Evaluation

    Plaintiff alleges that she faced disparate treatment because of her race.  To state a disparate treatment claim, a plaintiff must allege that: "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  Regarding the third element, "an adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'"  Id. (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1126 (9th Cir. 2000)) (alteration and omission in Davis).

    The only employment action alleged in the complaint that could be considered adverse (other than harassment and failure to promote, which are discussed separately below) is Plaintiff's performance evaluation.[4]  But on that evaluation, Plaintiff

---

    [4]Plaintiff also alleges that Defendants "stripped" her personnel file of "many of [her] performance evaluations and all of
(continued...)

received the rating, "exceeds expectations" in four categories and the rating, "meets expectations" in three categories.  While these ratings may have been lower than those which Plaintiff had received in the past, and while Plaintiff found the reference to her "flaming" her co-workers objectionable, she has not alleged that she suffered any negative consequence as a result of the evaluation.  Because she has not alleged that the performance evaluation materially affected the compensation, terms, conditions, or privileges of her employment, she has not stated a disparate treatment claim on that basis under either Title VII, § 1981 or § 1983.

    B.   Hostile Work Environment

    Plaintiff claims that she was subjected to a hostile work environment because of her race.  In order to state such a claim, she must allege: (1) that she was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).

    Although Plaintiff has alleged that Mr. Wullenjohn was rude to her on a number of occasions, she has not alleged any incidents involving racial statements or acts.  Nor has she provided any factual basis for linking Mr. Wullenjohn's treatment of her to her

---

    4(...continued)
[the] results of [her] promotional exams."  Compl. ¶ 100.  However, Plaintiff appears to consider this an act of retaliation for filing the present lawsuit, not an adverse employment action taken against her because of her race.  See Pl.'s Opp. at 8-9.

**United States District Court**
For the Northern District of California

race.  Title VII is not a "general civility code," <u>Manatt v. Bank of Am., NA</u>, 339 F.3d 792, 798 (9th Cir. 2003), and thus does not prohibit conduct of the nature Plaintiff describes.  Accordingly, she has not stated a hostile work environment claim.

Moreover, even if Mr. Wullenjohn's remarks had been motivated by racial animus, in order to constitute a hostile work environment, harassment must be

> sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  It must be both objectively and subjectively offensive.  To determine whether an environment is sufficiently hostile, [courts] look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

<u>Ray v. Henderson</u>, 217 F.3d 1234, 1245 (9th Cir. 2000) (citations and internal quotation marks omitted).

While the remarks quoted above that Mr. Wullenjohn allegedly made to Plaintiff may suggest that he employed a demanding management style, they are not objectively humiliating or derogatory.[5]  <u>Cf.</u> <u>Surrell v. Cal. Water Serv. Co.</u>, 518 F.3d 1097, 1108-09 (9th Cir. 2008) (allegations that supervisor confronted employee in front of customer about failing to perform her job, accused employee in front of customer and coworker of failing to pay attention to her job and told employee that she was too slow

---

[5]The Court notes that the term, "guinea pig" can be used figuratively to refer to the test subject of a new strategy or technique.  <u>See</u> Webster's Third New International Dictionary, Unabridged (1993) (defining "guinea pig" as, among other things, "a subject of experimentation or testing designed to yield data for drawing scientific conclusions or large-scale calculations").  Even if the term was not used in this context, the allegations in the complaint do not suggest that Mr. Wullenjohn's use of the term was connected to Plaintiff's race or her complaints to DRA managers.

with her work, if proven, would not create hostile work environment claim because alleged comments were related to performance and were not sufficiently severe or pervasive).  As for Plaintiff's allegation that on "at least one occasion, Defendant Wullenjohn used offensive gestures towards Plaintiff, i.e., 'flipping the bird'," Am. Compl. ¶ 181, although such a gesture may be considered objectively offensive, it does not rise to the level required to state a hostile work environment claim under either Title VII, § 1981 or § 1983.

C.   Failure to Promote

Plaintiff alleges that she was denied promotional opportunities because of her race.  To state a Title VII claim for failure to promote, a plaintiff must allege that: "(1) she belongs to a protected class; (2) she applied for and was qualified for the position she was denied; (3) she was rejected despite her qualifications; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).

Plaintiff has alleged that she is a member of a protected class and that she scored well enough on the PURA IV and PURA V exams to make her eligible to apply for positions above her current level.  She also alleges generally that she applied for "several job openings" within CPUC but was rejected.  She has not alleged, however, any details about the positions or their specific requirements, including whether they required classification as PURA IV or V.  Nor has she alleged any details about her

United States District Court
For the Northern District of California

applications for the positions or any facts to support a conclusion that she was qualified for them.  Finally, she has not alleged that the positions for which she applied were filled with individuals who are not African-American.  Therefore, she has not stated a claim for failure to promote under Title VII, § 1981 or § 1983.

D.   Disparate Impact Claim

Plaintiff alleges that CPUC's hiring and promotion practices have a disparate impact on African-American employees.  "To establish a prima facie case of disparate impact under Title VII, [a] plaintiff[] must: (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact."  <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1190 (9th Cir. 2002).

Plaintiff asserts in general terms that CPUC lacks a "bona fide merit-based system" for hiring and promotion and that this has a disparate impact on African-Americans.  However, the complaint does not identify any specific facially neutral practice, let alone provide a factual basis for concluding that such a practice has a disparate impact on the hiring or promotion of African-Americans and affected Plaintiff specifically.  <u>See</u> Am. Compl. ¶¶ 121-22.  In her opposition to the present motions, Plaintiff appears to argue that CPUC's promotional policies leave supervisors with too much leeway to impose their racial prejudices on the selection process.  But this argument amounts to a disparate treatment claim, not a disparate impact claim.  Nor has Plaintiff cited any authority supporting the proposition that the lack of a merit-based system of

United States District Court
For the Northern District of California

hiring and promotion is, by itself, a proper basis for a Title VII discrimination claim.

III. Retaliation

A.   Title VII

Pursuant to Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to retaliate against an employee who has opposed any practice made unlawful under Title VII.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case for Title VII retaliation, a plaintiff must show that: (1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) there was a causal link between the protected activity and the employer's action.  Davis, 520 F.3d at 1093-94.

Plaintiff's retaliation claim fails because she has not alleged an adverse employment action, as discussed above.  In addition, Plaintiff does not allege that she engaged in an activity protected under Title VII.  She does not, for instance, allege that she spoke out against any racially discriminatory practice on the part of CPUC.  Rather, she alleges that she was retaliated against for complaining about the poor performance of her co-workers and the consequent detriment to the public interest.  This kind of activity does not fall within the purview of Title VII.  Therefore, she may not pursue a Title VII claim based on the allegedly retaliatory acts taken against her.

B.   First Amendment

Plaintiff also appears to assert a retaliation claim under § 1983 for violation of her First Amendment rights, as evinced by her statement that "her comments regarding project malfeasance fell

14

United States District Court
For the Northern District of California

under the category of protected speech, since the project addressed energy procurement for CPUC-regulated utilities who serve approximately 80% of California's electricity demand." Pl.'s Opp. (Docket No. 63) at 7.  To prevail on a claim that a government employer punished a public employee for exercising her free speech rights, a plaintiff must show: (1) that she engaged in constitutionally protected speech; (2) that the defendant took an adverse employment action against her; and (3) that her speech was a substantial or motivating factor in the adverse action.  See Pool v. VanRheen, 297 F.3d 899, 906 (9th Cir. 2002).

In Garcetti v. Ceballos, 547 U.S. 410 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.  Garcetti involved retaliation against a deputy district attorney for writing an internal memorandum to his supervisors regarding what he believed to be misconduct in an investigation. Id. at 413-16.  Although this was an issue of potential public concern, the Court found the "controlling factor" to be that "his expressions were made pursuant to his duties as a calendar deputy." Id. at 421.  Because the plaintiff had spoken "as a prosecutor fulfilling his responsibility to advise his supervisor about how best to proceed with a pending case," his speech was not protected by the First Amendment.  Id. at 1960.

As an analyst, Plaintiff has described her duties as including "conducting technical and analytical research work as well as consultative and advisory services in the areas of economics,

15

**United States District Court**
For the Northern District of California

finance, and policy." Compl. ¶ 145.  As the coordinator of the

Resource Adequacy Project, Plaintiff was responsible for "project

management, making policy recommendations and reporting to DRA

management regarding progress in staff proceedings." Id. ¶ 148.

The speech she claims is protected consists of her complaints to

DRA management that two of her co-workers were failing to discharge

their duties in a satisfactory manner.  Plaintiff alleges that this

was a matter of public concern because CPUC's ability to prevent

blackouts and ensure that the State's energy contracts are fair is

critical to the public welfare.  Even accepting this contention as

true, however, Plaintiff has not alleged that she engaged in any

speech that did not fall within the self-described responsibilities

of her position.  To the contrary, raising her concerns with the

performance of project members was inherently a function of her

duty to manage the project and report progress to DRA management.

Therefore, under Garcetti, Plaintiff has not stated a claim.  Cf.

Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006) (correctional

officer's complaints to a state senator and an independent state

agency about prison officials' failure to prevent male inmates from

sexually harassing her constituted protected speech; she made the

complaints to the outside officials in her capacity as a citizen

concerned with protecting her rights, not in the course of

discharging her duties as an officer); Marable v. Nitchman, 511

F.3d 924 (9th Cir. 2007) (ferry engineer for the Washington State

Department of Transportation could pursue First Amendment

retaliation claim based on reporting his supervisors' allegedly

corrupt overpayment schemes to upper-level management; his official

duties related to the operation of his ferry, and did not include a

duty to ensure that his supervisors were refraining from corrupt practices).

Additionally, even if Plaintiff's speech were constitutionally protected, she has not alleged that she suffered any adverse employment action as a result of it.  As discussed above, her performance evaluation did not constitute an adverse action under the applicable legal standard.  And although a hostile work environment may serve as the basis for a retaliation claim, Ray, 217 F.3d at 1245, as discussed above, Plaintiff has not alleged harassment of the type giving rise to a hostile work environment.

Finally, because "federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983," Miller v. County of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994), Plaintiff's First Amendment claim is presumptively barred by the SPB's finding that no adverse employment action was taken against her.[6]  As the Ninth Circuit explained,

> the federal common law rules of preclusion . . . extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966).  The fairness requirements of Utah Construction are: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate.

Id. at 1032-33 (internal quotation marks and citations omitted). As long as the fairness requirements are met, federal courts must give the same preclusive effect to state agency determinations as

---

[6]Plaintiff's Title VII claim, in contrast, is not precluded by the SPB proceedings.  See Univ. of Tenn. v. Elliott, 478 U.S. 788, 795-96 (1986).

United States District Court
For the Northern District of California

they would be given in the state in which they were rendered.  See id. at 1032.

It is clear that the SPB was acting in a judicial capacity when it adjudicated Plaintiff's whistleblower retaliation complaint and that it resolved issues of fact that were properly before it. See Cal. Gov't Code § 19683.  In addition, California courts will give preclusive effect to findings made by the SPB, even without the benefit of a full evidentiary hearing.  See Cal. Pub. Employees Ret. Sys. v. Superior Court, 160 Cal. App. 4th 174, 177-78 (2008). Thus, the SPB's decision must be given preclusive effect unless Plaintiff was not given an adequate opportunity to litigate.

Plaintiff claims that the SPB failed to follow procedures mandated by state statute.  See Am. Compl. ¶ 133.  This vague and conclusory allegation, however, is not supported by any factual allegations in the complaint.  Plaintiff also complains in her opposition to the present motion that the SPB "followed an informal hearing process, with relaxed evidentiary standards, i.e., no cross-examination, no testimony from witnesses, and a short, condensed hearing time."  Pl.'s Opp. at 18.  Plaintiff's suggestion that no testimony was presented during the course of the SPB proceedings is contradicted by the allegations in the complaint, see Am. Compl. at ¶¶ 199-200, 226, and documents she has submitted from those proceedings, see Pl.'s Sec. Req. for Judicial Notice Exs. A & B.  And Plaintiff has cited no case for the proposition that an administrative proceeding that employs relaxed evidentiary standards, does not permit cross-examination or operates on a shortened time frame necessarily fails to offer participants a fair opportunity to litigate under the Utah Construction standard.

United States District Court
For the Northern District of California

Moreover, Plaintiff had the opportunity to challenge the adequacy and propriety of the SPB's procedures by seeking a writ of mandate in state court setting aside the agency's decision.  Cal. Code Civ. Proc. § 1094.5  She did not do so.

Because it appears from the facts alleged in the complaint that there is no basis for failing to give the SPB's findings preclusive effect, the only question is whether, based on general principles of collateral estoppel, Plaintiff's First Amendment retaliation claim is now barred.  Under California law, collateral estoppel will bar litigation of an issue if: (1) it is identical to an issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior proceeding.  People v. Barragan, 32 Cal. 4th 236, 253 (2005).

Plaintiff argues that collateral estoppel does not apply because the issues before the SPB were not identical to those in the present action.  It is true that the SPB stated that it did not have jurisdiction to adjudicate a First Amendment retaliation claim.  Nonetheless, after considering evidence of the allegations contained in the complaint in the present action, the SPB found that Plaintiff had not established a whistleblower retaliation claim because she had not suffered an adverse employment action.  An adverse employment action is an element of Plaintiff's First Amendment retaliation claim as well.  Plaintiff is therefore precluded from now claiming that she has satisfied this element.

IV.   Obstruction of Justice

Plaintiff's first claim for "obstruction of justice" is based on her allegation that Defendants Appling and Aguilar, acting in their capacity as counsel for CPUC, instructed CPUC employees not to respond to Plaintiff's written "Request for Written Statement." Plaintiff had distributed this request to various employees in connection with her retaliation case before the SPB.

Plaintiff cites no legal basis for a civil cause of action for "obstruction of justice."  In her opposition to Defendants' motion, Plaintiff characterizes Ms. Appling and Mr. Aguilar's instructions not to cooperate with her as acts of retaliation.  This claim fails for the same reasons her other retaliation claims fail: the instructions did not constitute an adverse employment action, nor has she linked them to any activity protected under Title VII or the First Amendment.

Plaintiff also purports to assert "obstruction of justice" claims based on the actions of the SPB and its employees, Defendants Brown and Shimomura.[7]  Given her allegation that Mr. Brown and Mr. Shimomura tampered with evidence relevant to the pursuit of her retaliation claim in the SPB, the Court will construe this claim as a due process challenge brought under § 1983 against these individual Defendants.[8]  A two-part test applies to such a claim:

---

[7]Plaintiff accuses these Defendants of violating several sections of the California Penal Code.  Plaintiff has not cited any authority for the proposition that a litigant can bring a civil action for violation of these statutes.  Nor would the Court have original subject matter jurisdiction over any such proceeding.

[8]As discussed above, Plaintiff may not bring a § 1983 claim against the SPB itself.

20

**United States District Court**
For the Northern District of California

> The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty."  See U.S. Const., Amdt. 14 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.

<u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59 (1999).

In the first instance, although Plaintiff maintains that she had a liberty interest in the SPB proceedings, it does not appear from the allegations in the complaint that her liberty was actually at stake.  Nor has Plaintiff cited any case in which a liberty interest was found in similar circumstances.  Moreover, even if Plaintiff had a protected interest in the SPB proceedings, her vague allegations are insufficient to state a due process claim against either Mr. Brown or Mr. Shimomura.  She provides no information concerning the nature of the missing evidence, and she fails to allege that either of these Defendants was personally involved in its destruction, as she is required to do.  See <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983.")  In short, the complaint is not sufficient to put Mr. Brown or Mr. Shimomura on notice of the basis of the claims against them, and thus those claims cannot withstand a motion to dismiss.[9]

---

[9]Defendants argue that Mr. Brown and Mr. Shimomura are entitled to absolute judicial immunity.  But they have not cited (continued...)

Plaintiff also claims that Mr. Brown denied her the right-to-sue letter she needed in order to file a whistleblower action in state court.  But she has cited no legal provision that required her to obtain a right-to-sue letter prior to bringing such an action.  California regulations require the SPB to issue a notice of findings for each retaliation claim that is brought before it. 2 Cal. Code Regs. § 56.5(a).  It is true that, if the SPB concludes that a complainant's allegations of retaliation are not proven, it must "notify the complainant that his or her administrative remedies have been exhausted and that the complainant may file a civil complaint with the superior court."  Id. § 56.5(b).  And although Plaintiff's notice informed her that she had exhausted her administrative remedies, it did not inform her that she had the right to file a civil complaint in superior court.  Defs.' Req. for Judicial Notice (Docket No. 52) Ex. A.

Failure to comply with such a state procedural regulation does not give rise to a claim for a federal constitutional due process violation.  Further, the omission did not prevent Plaintiff from filing a lawsuit.  The California Whistleblower Protection Act requires only that a would-be plaintiff first file a complaint with the SPB and wait to file a lawsuit until the Board issues, or fails to issue, a notice of its findings.  Cal. Gov't Code § 8547.8(c). It is not disputed that the SPB issued a notice of its findings

United States District Court

For the Northern District of California

─────────────────────────

[9](...continued)
any authority supporting the proposition that state administrative law judges or executive officers are absolutely immune from liability under § 1983 for constitutional violations.  In addition, to the extent Plaintiff charges these Defendants with deliberately destroying evidence, she appears to argue that they engaged in conduct falling outside the role of a judicial officer.

here, and thus there was no impediment to Plaintiff's filing a whistleblower suit in state court.

V.    Intentional Infliction of Emotional Distress

Plaintiff asserts a claim for "[i]ntentional infliction of emotional distress, in violation of Title VII of the Civil Rights Act of 1964, as amended Title 42, Section 2000e-2(a) and 2000e-3(a)." Am. Compl. ¶ 208. It is not clear whether Plaintiff intends to assert a claim for the common law tort of intentional infliction of emotional distress (IIED), in addition to a hostile work environment claim under Title VII.[10] To the extent she does, she was required first to file an administrative claim pursuant to the California Tort Claims Act (TCA). See Cal. Gov't Code § 945.4. Plaintiff does not allege that she filed such a claim. Nor does she argue that she was not required to do so. She argues only that the TCA's requirements do not apply to claims brought pursuant to § 1983. But this argument has no bearing on whether she was required to comply with the TCA's procedures prior to bringing her tort claim. Because Plaintiff does not allege that she satisfied the requirements of the TCA, she may not pursue a tort claim against Defendants.

Additionally, in order to state a claim for IIED, Plaintiff must show (1) extreme and outrageous conduct (2) intended to cause or done in reckless disregard for causing (3) severe emotional distress, and (4) actual and proximate causation. See Cervantez v. J.C. Penney Co., Inc., 24 Cal. 3d 579, 593 (1979). The conduct must be so extreme as to "exceed all bounds of that usually

_____

[10]There is no specific cause of action for intentional infliction of emotional distress under Title VII.

23

tolerated in a civilized community," id., and the distress so severe "that no reasonable [person] in a civilized society should be expected to endure it." Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970). Just as Plaintiff has not alleged conduct sufficient to constitute a hostile work environment, neither has she alleged conduct of the extreme and outrageous nature required to state an IIED claim.

VI.   Punitive Damages

Defendants ask the Court to strike Plaintiff's claim for punitive damages. Because the Court is dismissing the entire complaint, this request is moot. However, the Court notes that punitive damages are not available for Title VII claims against a "government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). Thus, should Plaintiff choose to file a second amended complaint, she may not seek punitive damages against CPUC or the SPB in connection with her Title VII claims.[11] In contrast, punitive damages are available under § 1983, and thus Plaintiff may seek such damages on her constitutional claims against the individual Defendants. See Smith v. Wade, 461 U.S. 30, 56 (1983).

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions (Docket Nos. and 50 and 86) and dismisses the complaint in

---

[11]Defendants' argument that punitive damages are barred by California Government Code § 818 is incorrect. See Barefield v. Cal. State Univ. Bakersfield, 2006 WL 829122, at *6-*7 (E.D. Cal.). Plaintiff's Title VII claims are governed by federal law, not California law.

United States District Court
For the Northern District of California

its entirety.[12]   As explained above, this dismissal is with
prejudice with respect to Plaintiff's Title VII claims against the
individual Defendants and her claims under §§ 1981, 1983 and 1985
against CPUC and the SPB.   Plaintiff is given leave to amend her
other claims to allege, if she can truthfully do so, facts curing
the deficiencies noted above.   Any second amended complaint must be
filed within thirty days of the date of this order.   If Plaintiff
chooses to file a second amended complaint, she must comply with
the following instructions:

1.   Plaintiff may choose which claims to re-assert in the second
     amended complaint.   However, after listing the factual
     allegations common to all claims, the complaint must organize
     the re-asserted causes of action under one or more of the
     following headings: (1) Race Discrimination: Disparate
     Treatment; (2) Race Discrimination: Hostile Work Environment;
     (3) Race Discrimination: Failure to Promote; (4) Race
     Discrimination: Disparate Impact; (5) Retaliation: Title VII;
     (6) Retaliation: First Amendment; (7) Failure to Afford Due
     Process: § 1983; and (8) Intentional Infliction of Emotional
     Distress.   Under each heading, Plaintiff must succinctly list
     the facts giving rise to that cause of action, state which
     Defendants she wishes to sue for the cause of action and
     allege what each of those Defendants did to incur liability.
     Plaintiff may not list any cause of action other than these
     eight; the facts upon which Plaintiff's claims for

---

[12]Plaintiff's motion to strike Defendants' motions to dismiss
(Docket No. 92) is DENIED.   There is no legal basis for this
motion.

United States District Court
For the Northern District of California

"obstruction of justice" are based must be included in one of the eight, if Plaintiff wishes to pursue claims based on those facts.

2.   If Plaintiff chooses to assert a race discrimination claim based on disparate treatment, she must allege facts showing that she was subject to an adverse employment action -- that is, an action that materially affected the compensation, terms, conditions or privileges of her employment.

3.   If Plaintiff chooses to assert a claim for a racially discriminatory hostile work environment, she must allege facts showing that she was subjected to verbal or physical conduct of a racial nature, and that such conduct was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive work environment.

4.   If Plaintiff chooses to assert a claim for race-based failure to promote, she must identify each position for which she applied and state her qualifications and the facts and circumstances surrounding her application.  She must also allege that she was rejected for the position despite being qualified, and that the position was filled with an employee who was not African-American or that CPUC continued to consider other applicants whose qualifications were comparable to hers.

5.   If Plaintiff chooses to assert a disparate impact discrimination claim, she must identify a specific facially neutral employment practice and must allege facts sufficient to conclude that the practice has a disparate impact on African-American employees, including herself.

26

6.   If Plaintiff chooses to assert a retaliation claim under Title
     VII, she must allege that she suffered a particular adverse
     employment action as the result of engaging in specifically
     described activity related to Title VII's protection against
     race discrimination.

7.   If Plaintiff chooses to assert a retaliation claim under the
     First Amendment, she must show that she was retaliated against
     for speech that was made other than pursuant to her duties as
     a CPUC employee.  She must also allege facts showing that she
     was subject to an adverse employment action.  If she alleges
     that she experienced retaliation for protected speech in the
     form of a hostile work environment, she must allege facts
     showing that she was subjected to verbal or physical conduct
     that was causally linked to her protected speech, and that
     such conduct was sufficiently severe and pervasive to alter
     the conditions of her employment and create an abusive work
     environment.  Because a First Amendment retaliation claim is
     presumptively barred by collateral estoppel, Plaintiff must
     also allege specific facts showing that she was not given an
     opportunity to litigate her whistleblower retaliation claim
     before the SPB.

8.   If Plaintiff chooses to assert a due process claim against
     individual Defendants under § 1983, she must allege facts
     sufficient to show that she had a liberty interest in the SPB
     proceedings.  She must also identify the specific actions
     Defendants Brown and Shimomura allegedly took to interfere
     with her due process rights, and must allege facts sufficient
     to conclude that these actions actually deprived her of due

27

**United States District Court**
For the Northern District of California

1    process.

2    9.    If Plaintiff chooses to assert a tort claim for intentional

3          infliction of emotional distress, she must allege that she

4          complied with the claims-presentation requirements of the

5          California Tort Claims Act.  She must also allege facts

6          showing that she was subjected to extreme and outrageous

7          conduct exceeding all bounds of that usually tolerated in a

8          civilized community.

9          If Plaintiff does not file a second amended complaint within

10   thirty days, this case will dismissed with prejudice for failure to

11   prosecute.

12         IT IS SO ORDERED.

13

14   Dated: 6/30/08

15                                          CLAUDIA WILKEN
                                            United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DONNA HINES,

        Plaintiff,

  v.

CALIFORNIA   PUBLIC   UTILITIES
COMMISSION et al,

        Defendant.

_____/

Case Number: CV07-04145 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 30, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Christine G. Esperanza
Department of Justice
1515 Clay Street, Suite 2000
Oakland,  CA 94612

Donna  Hines
268  Bush Street, #3204
San Francisco,  CA 94104

Vera Kazumi Kawamura
State of California-Attorney General
Dept. of Justice
P.O. Box 70550
1515 Clay Street, 20th Floor
Oakland,  CA 94612

Dated: June 30, 2008

                          Richard W. Wieking, Clerk
                          By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California