**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

DONNA HINES,                          No. C 07-4145 CW

11
            Plaintiff,

12                                    ORDER GRANTING IN
      v.                              PART DEFENDANTS'
13                                    MOTIONS TO DISMISS

CALIFORNIA PUBLIC UTILITIES

14 COMMISSION, et al.,

15          Defendants.
   _____/

16

17

18     Defendants California Public Utilities Commission (CPUC),

19 Arocles Aguilar, Dana Appling and Robert Wullenjohn move to dismiss

20 pro se Plaintiff Donna Hines' claims against them.  Defendants

21 California State Personnel Board (SPB), Gregory Brown and Floyd

22 Shimomura move separately to dismiss her claims against them.

23 Plaintiff opposes both motions.  The matter was taken under

24 submission on the papers.  Having considered all of the papers

25 submitted by the parties, the Court grants Defendants' motions in

26 part.  The claims that are dismissed pursuant to this order were

27 previously dismissed with leave to amend.  Because Plaintiff failed

28 to cure the deficiencies in the first amended complaint as

instructed by the Court, those claims are now dismissed with prejudice.

BACKGROUND

I.   Allegations in the First Amended Complaint

The Court dismissed the first amended complaint in its entirety.  In her second amended complaint, Plaintiff omits many of the facts from the first amended complaint that permit an understanding of the basis of her claims.  Because Plaintiff is proceeding pro se, the Court will consider the second amended complaint to incorporate the allegations in the first amended complaint.  The following facts either were alleged in the first amended complaint or could be gleaned from documents properly considered on the previous motions to dismiss.

A.   Discrimination and Retaliation Claims

Plaintiff is an African-American woman.  She began working for the CPUC in June, 2002 and continues to work there today as a Public Utilities Regulatory Analyst (PURA).  "Analysts are responsible for conducting technical and analytical research work as well as consultative and advisory services in the areas of economics, finance, and policy."  FAC ¶ 145.  According to Plaintiff, her early performance evaluations were uniformly positive and she was promoted in October, 2003.

In early 2004, Plaintiff was transferred to the Division of Ratepayer Advocates (DRA), where she began working on the Resource Adequacy Project.  She soon became the coordinator of this project, which sought to prevent blackouts in California.  Both analysts and attorneys were assigned to the project.  Analysts generally wrote "policy recommendations for management review," while attorneys

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

assisted in "drafting policy recommendations, presenting testimony, and submitting briefs before the CPUC." Id. ¶ 149. As the project coordinator, Plaintiff's duties involved "project management, making policy recommendations and reporting to DRA management regarding progress in staff proceedings." Id. ¶ 148. In or around early October, 2004, Defendant Wullenjohn was transferred to the DRA and became Plaintiff's supervisor.

Even prior to Mr. Wullenjohn's transfer, Plaintiff had begun to identify problems with the project related to what she characterizes as "malfeasance and deficient staff support." Id. ¶ 56. The "malfeasance" consisted of the failure of two project members to complete their tasks in a satisfactory manner. Specifically, one attorney did not respond to Plaintiff's request that he perform "due diligence and legal assistance" by reviewing drafts of energy contracts to ensure that "taxpayers got a fair deal." Id. ¶¶ 152, 153. In addition, one analyst did not respond to Plaintiff's request that he analyze "feasibility proposals" and comment on whether they were "consistent with engineering norms or standards." Id. ¶ 153. As a result, Plaintiff had to perform much of this work herself. These two team members also failed to coordinate their efforts with Plaintiff and other project members, leading to inefficiency and oversights that Plaintiff maintains negatively impacted the public interest.

Plaintiff raised her concerns about her co-workers' poor performance with upper-level DRA management. She was told that she had identified problems that were not limited to her project, but rather were common throughout the division. Shortly after Mr. Wullenjohn began as Plaintiff's supervisor, a senior manager held a

United States District Court
For the Northern District of California

meeting to discuss the issues Plaintiff had raised.

After the meeting, Mr. Wullenjohn allegedly spoke with Plaintiff and told her that he thought some of the conflict between her and the other project members was attributable to her own actions. Plaintiff claims that this discussion was the beginning of a pattern whereby Mr. Wullenjohn continually held her responsible for the shortcomings of other staff members. Mr. Wullenjohn allegedly began to harass and abuse Plaintiff, chastising and threatening her. While doing this, he exhibited an attitude that Plaintiff maintains "translates" as, "If I tell you to jump, the only thing you need ask is 'How high?'" Id. ¶ 181. He frequently ordered Plaintiff, "If you have a problem, you come to me!" Id. On one occasion, he demanded that Plaintiff talk with him "right there, right now!!" and told Plaintiff that he was using her as a "guinea pig." Id. ¶ 182. "On at least one occasion, Defendant Wullenjohn used offensive gestures towards Plaintiff, i.e., 'flipping the bird.'" Id. ¶ 181.

Plaintiff alleges that Mr. Wullenjohn's treatment of her was done in retaliation for her complaints to management about her co-workers. She also claims that it was based on racial animus. To support this latter claim, she alleges that she asked various colleagues if they had experienced problems working with Mr. Wullenjohn. The only employee to complain of the type of "abusive, hostile, bullying behavior" Plaintiff had experienced was African-American as well. Id. ¶ 185.

Plaintiff's problems with Mr. Wullenjohn culminated in her January, 2006 performance evaluation, which Mr. Wullenjohn completed. In the evaluation, Plaintiff received the rating,

4

United States District Court
For the Northern District of California

"exceeds expectations" in four categories and the rating, "meets expectations" in three categories. Plaintiff claims that, in her previous evaluations, she had received the rating, "oustanding" in all categories. In addition, under the category, "relationships with people," Mr. Wullenjohn wrote, "Donna has in the past 'flamed' her managers and co-workers in e-mails." Id. ¶ 89. Plaintiff maintains that the evaluation constitutes an adverse employment action taken in retaliation for her complaints and was "grounded in racial animus." Id. ¶ 90.

Unable to continue working under such conditions, in February, 2006, Plaintiff asked to be reassigned to a different project. Her request was granted, but she continued to report to Mr. Wullenjohn on administrative matters until June, 2006, when she was assigned a new supervisor.

Plaintiff also claims that, during her time as the project coordinator, she performed the work of an employee with a higher civil service grade classification than her own PURA III grade, but did not receive the wages to which such an employee would be entitled. She asserts that this was tantamount to being wrongfully denied a promotion. She also alleges that she took civil service exams to qualify for classification as PURA IV and PURA V, each of which is a higher rank than PURA III. Even though she earned a score that made her eligible to apply for several positions, her applications for these positions were rejected. She asserts that this is because the CPUC lacks a "bona fide merit-based system for evaluating, hiring, and promoting staff," which results in a disparate impact on African-American employees. Id. ¶ 122. In addition, when Plaintiff re-took the PURA IV exam at a later date,

she was "downgraded to a rating of '3'." Id. ¶ 120.  She maintains that this is further evidence of retaliation against her.

B.   "Obstruction of Justice"

On February 23, 2006, Plaintiff filed a complaint of retaliation with the California State Personnel Board (SPB). During the course of the SPB's investigation, Defendant Aguilar, an attorney for the CPUC, allegedly directed several of Plaintiff's co-workers not to answer Plaintiff's "Request for Written Statement," which she had served on them in connection with her SPB case.  Mr. Aguilar allegedly did this in collusion with Defendant Appling[1] to deter Plaintiff's co-workers from serving as witnesses.

The SPB conducted an investigation into Plaintiff's retaliation complaint and held an informal hearing on January 4, 2007.  On January 18, it issued a notice of its findings and dismissed Plaintiff's case.[2]  In doing so, it found that Plaintiff had not established by a preponderance of the evidence a claim under the California Whistleblower Protection Act because she had not been subjected to an adverse employment action.

Plaintiff claims that the SPB, acting through Defendant Shimomura, its Executive Officer at the time, unlawfully failed to

---

[1]The first amended complaint did not specify Ms. Appling's position or provide detailed information about her role in the events giving rise to this lawsuit.  The second amended complaint clarifies that Ms. Appling is the director of the DRA.

[2]The Court previously took judicial notice of the contents of the SPB decision, although not of the truth of the facts stated therein, and does so again for the purposes of this motion.  See Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (court may take judicial notice of facts not reasonably subject to dispute, either because they are generally known, are matters of public record or are capable of accurate and ready determination).

United States District Court
For the Northern District of California

provide her with the right-to-sue letter she purportedly needed in order to file a lawsuit in state court.  In addition, she claims that, after she filed the present lawsuit, Defendant Brown, the administrative law judge who presided over her case, "destroyed, or allowed to be destroyed," certain "key elements of evidence and/or information" relevant to Plaintiff's claims.  Id. ¶¶ 142, 141.

C.   Plaintiff's Pursuit of Administrative Remedies

As noted above, Plaintiff pursued a claim with the SPB. Although she asserts that this claim was based on both discrimination and retaliation, the SPB's decision addresses only a retaliation claim based on California's Whistleblower Protection Act.  It does not discuss any allegation that Plaintiff was discriminated against on the basis of her race.

The first amended complaint alleged that, after Plaintiff's SPB case was closed, she filed complaints both with the California Department of Fair Employment and Housing and with the Equal Employment Opportunity Commission.  Both agencies issued Plaintiff right-to-sue letters.

II.  Procedural History

As noted above, the Court dismissed the first amended complaint in its entirety.  The dismissal was with prejudice with respect to Plaintiff's Title VII claims against the individual Defendants and her claims under §§ 1981, 1983 and 1985 against the CPUC and the SPB.  Plaintiff was given leave to amend her other claims to allege facts curing the deficiencies discussed by the Court.  Because the first amended complaint did not clearly specify the claims Plaintiff was asserting and the legal bases therefor, Plaintiff was directed to organize her second amended complaint

United States District Court
For the Northern District of California

around eight potential causes of action identified by the Court:
(1) Race Discrimination: Disparate Treatment; (2) Race
Discrimination: Hostile Work Environment; (3) Race Discrimination:
Failure to Promote; (4) Race Discrimination: Disparate Impact;
(5) Retaliation: Title VII; (6) Retaliation: First Amendment;
(7) Failure to Afford Due Process: § 1983; and (8) Intentional
Infliction of Emotional Distress.[3]  Plaintiff was also given
specific instructions with respect to curing the deficiencies in
the first amended complaint.  Those instructions are discussed in
more detail below.

The second amended complaint contains certain new allegations.
However, because the allegations are not organized into a
narrative, the Court will discuss them below as they relate to the
deficiencies identified in the previous order of dismissal.[4]

LEGAL STANDARD

A complaint must contain a "short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a).  Dismissal under Rule 12(b)(6) for failure to state a
claim is appropriate only when the complaint does not give the
defendant fair notice of a legally cognizable claim and the grounds
on which it rests.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544,
127 S. Ct. 1955, 1964 (2007).

---

[3]Plaintiff did not comply with the Court's direction to
organize the second amended complaint in this manner, and thus it
is still not clear which allegations she believes support her
various claims.

[4]The second amended complaint contains a number of statements
labeled as requests for admissions.  Because the Court has already
ordered that discovery may not proceed until all motions to dismiss
have been resolved, these requests for admissions are not operative
and will be considered merely as allegations of the complaint.

8

**United States District Court**
For the Northern District of California

     In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to a consideration of the allegations in the pleadings, the court may also consider matters of which judicial notice may be taken.  Doing so does not convert the motion into one for summary judgment.  United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 1993).  The court will deny a motion to dismiss, unlike a motion for summary judgment, even where the plaintiff is unable to demonstrate that material facts are in dispute.

     When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

                              DISCUSSION

I.   Race Discrimination: Disparate Treatment

     To state a disparate treatment claim, a plaintiff must allege that: "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." Davis v. Team Elec.

United States District Court
For the Northern District of California

Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  Regarding the third element, "an adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'"  Id. (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1126 (9th Cir. 2000)) (alteration and omission in Davis).

The Court previously noted that the only employment action alleged in the first amended complaint that could be considered adverse (other than harassment and failure to promote, which are treated as separate claims) was Plaintiff's performance evaluation.[5]  But on that evaluation, Plaintiff received the rating, "exceeds expectations" in four categories and the rating, "meets expectations" in three categories.  While these ratings may have been lower than those Plaintiff had received in the past, and while Plaintiff found the reference to her "flaming" her co-workers objectionable, she did not allege that she suffered any negative consequence as a result of the evaluation.  Because she did not allege that the performance evaluation materially affected the compensation, terms, conditions, or privileges of her employment, the Court found that she had not stated a disparate treatment claim on that basis under either Title VII, § 1981 or § 1983.

The Court instructed Plaintiff that, if she chose to assert a race discrimination claim based on disparate treatment in the

---

[5]Plaintiff also alleged that Defendants "stripped" her personnel file of "many of [her] performance evaluations and all of [the] results of [her] promotional exams."  FAC ¶ 100.  However, as the Court noted, Plaintiff appears to consider this an act of retaliation for filing the present lawsuit, not an adverse employment action taken against her because of her race.  See SAC ¶ 79.

**United States District Court**
For the Northern District of California

second amended complaint, she must allege facts showing that she was subject to an adverse employment action -- that is, an action that materially affected the compensation, terms, conditions or privileges of her employment.  The second amended complaint contains no new allegations concerning the impact of the performance evaluation on the compensation, terms, conditions, or privileges of Plaintiff's employment.  Accordingly, this claim is dismissed with prejudice.

II.  Race Discrimination: Hostile Work Environment

In order to state a racial discrimination claim based on a hostile work environment, a plaintiff must allege: (1) that she was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).

The Court previously noted that, although Plaintiff alleged in the first amended complaint that Mr. Wullenjohn was rude to her on a number of occasions, she did not allege any incidents involving racially tinged statements or acts.  Nor did she provide any factual basis for linking Mr. Wullenjohn's treatment of her to her race.  Title VII is not a "general civility code," Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003), and thus does not prohibit conduct of the nature Plaintiff described in the first amended complaint.  Accordingly, the Court found that she had not stated a hostile work environment claim.

The Court also noted that, even if Mr. Wullenjohn's remarks had been motivated by racial animus, in order to constitute a

11

United States District Court
For the Northern District of California

hostile work environment, harassment must be

> sufficiently severe or pervasive to alter the conditions
> of the victim's employment and create an abusive working
> environment.  It must be both objectively and
> subjectively offensive.  To determine whether an
> environment is sufficiently hostile, [courts] look to the
> totality of the circumstances, including the frequency of
> the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere
> offensive utterance; and whether it unreasonably
> interferes with an employee's work performance.

Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000) (citations and internal quotation marks omitted).  The Court explained that, while the remarks described in the first amended complaint may suggest that Mr. Wullenjohn employed a demanding management style, they were not objectively humiliating or derogatory, and did not rise to the level required to state a hostile work environment claim under either Title VII, § 1981 or § 1983.

The Court instructed Plaintiff that, if she chose to assert a claim for a racially discriminatory hostile work environment in the second amended complaint, she must allege facts showing that she was subjected to verbal or physical conduct of a racial nature, and that such conduct was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive work environment.  The second amended complaint contains only two additional allegations related to what may be characterized as "hostile" behavior on Mr. Wullenjohn's part, and neither of them is racial in nature.  The first is that Mr. Wullenjohn "often hovered over Plaintiff, barking at her in an aggressive, belligerent tone (I'm going to make you do 'X'!!  I'm going to make you do it, now!)."  SAC ¶ 25.  The second is that, in January, 2007, Mr. Wullenjohn "yelled out" while testifying at Plaintiff's SPB

**United States District Court**
For the Northern District of California

hearing, "I'm going to beat you, Donna.  I'm going to beat
you. . . beat the aggression out of you."  Id. ¶ 37 (punctuation in
original).  In addition to not being of a racial nature, this
latter remark was not made in the workplace, and Mr. Wullenjohn was
no longer Plaintiff's supervisor at the time he allegedly uttered
it.  The addition of these allegations is not sufficient to cure
the deficiencies previously identified by the Court, and
Plaintiff's hostile work environment claim is therefore dismissed
with prejudice.

III. Race Discrimination: Failure to Promote

To state a Title VII claim for failure to promote, a plaintiff
must allege that: "(1) she belongs to a protected class; (2) she
applied for and was qualified for the position she was denied;
(3) she was rejected despite her qualifications; and (4) the
employer filled the position with an employee not of plaintiff's
class, or continued to consider other applicants whose
qualifications were comparable to plaintiff's after rejecting
plaintiff."  Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027,
1037 (9th Cir. 2005).

The Court previously noted that Plaintiff alleged in the first
amended complaint that she is a member of a protected class and
that she scored well enough on the PURA IV and PURA V exams to make
her eligible to apply for positions above her current level.  She
also alleged generally that she had applied for "several job
openings" within the CPUC but was rejected.  She did not allege,
however, any details about the positions or their specific
requirements, including whether they required classification as
PURA IV or V.  Nor did she allege any details about her

applications for the positions or any facts to support a conclusion that she was qualified for them.  In addition, she did not allege that the positions for which she applied were filled with individuals who were not African-American.  Therefore, the Court found, she had not stated a claim for failure to promote under Title VII, § 1981 or § 1983.

The Court instructed Plaintiff that, if she chose to assert a claim for racially discriminatory failure to promote, she must identify each position for which she applied and state her qualifications and the facts and circumstances surrounding her application.  The Court also informed Plaintiff that she must allege that she was rejected for each position despite being qualified, and that the position was filled with an employee who was not African-American or that the CPUC continued to consider other applicants whose qualifications were comparable to hers.

The second amended complaint provides additional allegations about the positions for which Plaintiff applied.  She alleges that she applied for six specific positions between the summer of 2005 and the summer of 2007, and that she was "grade eligible" for each position.  SAC ¶ 96.  She also alleges that her work experience and educational background qualified her for the positions, but that non-African-American applicants were selected.  While the factual details of Plaintiff's failure to promote claim must be further developed through discovery, the second amended complaint contains allegations sufficient to overcome a motion to dismiss.

IV.   Race Discrimination: Disparate Impact

"To establish a prima facie case of disparate impact under Title VII, [a] plaintiff[] must: (1) show a significant disparate

14

**United States District Court**
For the Northern District of California

impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact."  <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1190 (9th Cir. 2002).

In the first amended complaint, Plaintiff asserted in general terms that the CPUC lacks a "bona fide merit-based system" for hiring and promotion, and that this has a disparate impact on African-Americans.  However, the complaint did not identify any specific facially neutral practice, let alone provide a factual basis for concluding that such a practice has a disparate impact on the hiring or promotion of African-Americans and affected Plaintiff specifically.  <u>See</u> FAC ¶¶ 121-22.

The Court informed Plaintiff that, if she chose to assert a disparate impact discrimination claim in the second amended complaint, she must identify a specific facially neutral employment practice and must allege facts sufficient to conclude that the practice has a disparate impact on African-American employees, including herself.  The second amended complaint contains additional allegations concerning the CPUC's unfair promotion practices.  However, the gist of these allegations is unchanged: the CPUC's promotional policies give supervisors too much discretion to impose their personal preferences on the selection process, which results in the promotion of unqualified individuals and leads to under-representation of African-American employees.  However, this amounts to a claim that certain employees are <u>intentionally</u> treated differently from others because of, at least in part, their race.  Plaintiff has not identified any particular

United States District Court

For the Northern District of California

facially neutral policy and explained how it has a disparate impact on African-American employees.  This promotion claim is essentially based on disparate treatment, not disparate impact.  As explained above, Plaintiff may pursue her disparate treatment claim for failure to promote.  The disparate impact claim, however, is dismissed with prejudice.

V.   Retaliation: Title VII

    To establish a prima facie case for Title VII retaliation, a plaintiff must show that: (1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) there was a causal link between the protected activity and the employer's action.  Davis, 520 F.3d at 1093-94.

    The Court previously found that Plaintiff had neither: 1) alleged an adverse employment action, as discussed above; nor 2) alleged that she engaged in an activity protected under Title VII.  With respect to protected activity, Plaintiff alleged in the first amended complaint that she was retaliated against, not for speaking out against a discriminatory practice, but for complaining about the poor performance of her co-workers.  This kind of activity does not fall within the purview of Title VII's protections.

    The Court informed Plaintiff that, if she chose to assert a retaliation claim under Title VII in the second amended complaint, she must allege that she suffered a particular adverse employment action as the result of engaging in specifically described activity related to Title VII's protection against race discrimination.  As discussed above, the second amended complaint does not allege that

16

an adverse employment action was taken against Plaintiff prior to the initiation of this lawsuit.  Nor does it allege that any purported adverse employment action before the lawsuit was filed was taken as a result of Plaintiff's protected activity; it continues to allege that Plaintiff was retaliated against because of her complaints about her co-workers' inefficiency.  Plaintiff therefore has failed to state a Title VII retaliation claim based on events that transpired prior to this lawsuit, and any such claim is dismissed with prejudice.

Like the first amended complaint, the second amended complaint alleges that, two months <u>after</u> Plaintiff filed this lawsuit, her personnel file was "stripped" of her performance evaluation.  However, unlike the first amended complaint, the second amended complaint articulates a basis for concluding that this constituted an adverse employment action.  According to Plaintiff, because a current performance evaluation was required before any CPUC employee could be considered for a promotion, she could not be promoted until her review was replaced some months later.  There were allegedly "numerous" promotional opportunities that she could have pursued in the interim.  SAC ¶ 81.  While the complaint's allegations on this matter are somewhat sparse, they are sufficient to state a Title VII retaliation claim.

VI.  Retaliation: First Amendment

To prevail on a claim that a government employer punished a public employee for exercising her free speech rights, a plaintiff must show: (1) that she engaged in constitutionally protected speech; (2) that the defendant took an adverse employment action against her; and (3) that her speech was a substantial or

**United States District Court**
For the Northern District of California

motivating factor in the adverse action.  See Pool v. VanRheen, 297 F.3d 899, 906 (9th Cir. 2002).  Not every statement of interest to the public is protected by the First Amendment.  When public employees make such statements "pursuant to their official duties," they "are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

In its previous order of dismissal, the Court noted that Plaintiff described her duties as an analyst to include "conducting technical and analytical research work as well as consultative and advisory services in the areas of economics, finance, and policy." FAC ¶ 145.  As the coordinator of the Resource Adequacy Project, Plaintiff was responsible for "project management, making policy recommendations and reporting to DRA management regarding progress in staff proceedings." Id. ¶ 148.  The Court noted that the speech Plaintiff claimed was protected by the First Amendment consisted of her complaints to DRA management that two of her co-workers were failing to discharge their duties in a satisfactory manner. Plaintiff alleged that this was a matter of public concern because the CPUC's ability to prevent blackouts and ensure that the State's energy contracts are fair is critical to the public welfare.

The Court concluded that, in the first amended complaint, Plaintiff had not alleged that she engaged in any speech that did not fall within the self-described responsibilities of her position.  To the contrary, raising her concerns with the performance of project members was inherently a function of her duty to manage the project and report progress to DRA management.

18

Therefore, the Court held that, pursuant to Garcetti, Plaintiff had not stated a claim.

Additionally, even if Plaintiff's speech were constitutionally protected, the Court noted that Plaintiff had not alleged that she suffered any adverse employment action as a result of it.  As discussed above, her performance evaluation did not constitute an adverse action under the applicable legal standard.  And although a hostile work environment may serve as the basis for a retaliation claim, Plaintiff had not alleged harassment of the type giving rise to a hostile work environment.

Finally, because "federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983," Miller v. County of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994), the Court found that Plaintiff's First Amendment claim was presumptively barred by the SPB's finding that no adverse employment action was taken against her.  The Court explained that, as long as the fairness requirements described in United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966), were met, it was required to give the same preclusive effect to the SPB's determinations as those determinations would be given in California courts.  The Utah Construction fairness requirements are "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." Miller, 39 F.3d at 1033.

The Court stated that it was clear the SPB was acting in a judicial capacity when it adjudicated Plaintiff's whistleblower retaliation complaint, and that the agency resolved issues of fact

United States District Court
For the Northern District of California

that were properly before it.  See Cal. Gov't Code § 19683.  In addition, the Court noted, California courts give preclusive effect to findings made by the SPB, even without the benefit of a full evidentiary hearing.  See Cal. Pub. Employees Ret. Sys. v. Superior Court, 160 Cal. App. 4th 174, 177-78 (2008).  Thus, the Court found that the SPB's decision must be given preclusive effect unless Plaintiff was not given an adequate opportunity to litigate.

The Court concluded that Plaintiff's vague and conclusory claim that the SPB failed to follow proper procedures was not supported by any factual allegations in the first amended complaint.  The Court also found that Plaintiff's allegations in her other court submissions, which focused on the fact that the SPB employed an "informal" hearing process to consider her claim, did not support the conclusion that she was not given an adequate opportunity to present her case.  Because there was no reason to deny the SPB proceedings preclusive effect, and because the SPB found that Plaintiff had not suffered an adverse employment action, the Court found that Plaintiff was precluded from claiming otherwise.

The Court informed Plaintiff that, if she chose to assert a First Amendment retaliation claim in the second amended complaint, she must allege that she was retaliated against for speech that was made other than pursuant to her duties as a CPUC employee.  She was also informed that she must further allege facts showing that she was subject to an adverse employment action or a hostile work environment.  In addition, the Court informed Plaintiff that any First Amendment retaliation claim would be precluded unless she alleged specific facts showing that she was not given an adequate

opportunity to litigate her whistleblower retaliation claim before the SPB.

The second amended complaint does not cure any of the three deficiencies identified by the Court.  As discussed above, Plaintiff has not alleged in anything other than conclusory terms that she suffered an adverse employment action.[6]  In addition, the entire premise of her claim -- that she was retaliated against for speaking out against the incompetence of her co-workers -- is based on conduct that was made pursuant to her official duties and thus was not protected by the First Amendment.  Finally, although the second amended complaint contains new allegations concerning deficiencies in the SPB proceedings, they do not support the conclusion that Plaintiff was not given an adequate opportunity to present her claim.  She continues to fault Mr. Brown for not granting her "Motion to Convert Hearing to a Formal Hearing and Investigatory Proceeding," SAC ¶ 49, but she does not explain how this affected her ability to present her case and does not show that she was legally entitled to any such formal hearing.  She continues to maintain that no witness testimony was given at the hearing, even as she submits hearing transcripts demonstrating unequivocally that testimony was given.  Her contention is apparently based on a distinction she draws between "testimony" and "narrative testimony."  The difference between the two is not clear, but Plaintiff appears to define the latter as testimony by a

_____

[6]Although Plaintiff has stated a Title VII claim based on the removal of the performance evaluation from her file, this claim is distinct from her First Amendment retaliation claim.  Her Title VII claim is based on alleged retaliation for filing this lawsuit, whereas her First Amendment claim is based on alleged retaliation for speaking out against her co-workers' poor performance.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

witness who is not subject to cross-examination.  In any event, as the Court noted previously, Plaintiff has cited no case standing for the proposition that an administrative proceeding that employs relaxed evidentiary standards, does not permit cross-examination or operates on a shortened time frame necessarily fails to offer participants a fair opportunity to litigate under the Utah Construction standard.  Moreover, Plaintiff had the opportunity to challenge the adequacy and propriety of the SPB's procedures by seeking a writ of mandate in state court setting aside the agency's decision.  Cal. Code Civ. Proc. § 1094.5.  She did not do so.

Because Plaintiff did not cure the deficiencies in the first amended complaint, her First Amendment retaliation claim is dismissed with prejudice.

VII. Due Process

A two-part test applies to a claim for denial of the Fourteenth Amendment's guarantee of due process:

> The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty."  See U.S. Const., Amdt. 14 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999).

The Court previously found that it did not appear from the allegations in the first amended complaint that Plaintiff had a liberty interest at stake in the SPB proceedings.  The Court also found that, even if such an interest had been at stake, her vague allegations of procedural deficiencies were insufficient to state a due process claim against either Mr. Brown or Mr. Shimomura.

22

United States District Court
For the Northern District of California

1    The Court informed Plaintiff that, if she chose to assert a
2    due process claim in the second amended complaint, she must allege
3    facts sufficient to show that she had a liberty interest at stake
4    in the SPB proceedings.  She was also informed that she must
5    identify the specific actions Defendants Brown and Shimomura
6    allegedly took to interfere with her due process rights, and must
7    allege facts sufficient to conclude that these actions actually
8    deprived her of due process.

9    The second amended complaint does not make any additional
10   factual allegations concerning the interest that was at stake in
11   the SPB proceedings.  Although Plaintiff argues that she "has a
12   liberty interest to pursue employment opportunities," SAC at 17,
13   she does not explain how the SPB proceedings impacted her ability
14   to pursue employment opportunities.  In addition, while she makes
15   certain additional allegations against Mr. Brown, they do not
16   amount to a due process violation.  Specifically, she claims that
17   he allowed Mr. Wullenjohn's testimony about his desire to "beat the
18   aggression out" of Plaintiff to be erased from the audio recording
19   of the proceedings.  This apparently happened when he attempted to
20   erase a portion of the tape that had inadvertently recorded a
21   privileged attorney-client communication.  She also claims that Mr.
22   Brown is withholding the complete version of the recording, despite
23   her request that he release it.  Even if this constituted
24   inappropriate conduct, however, Plaintiff does not allege that the
25   SPB proceeding itself was affected by it.

26   Plaintiff also recasts her "obstruction of justice" claims
27   against Defendants Appling and Aguilar as claims for "interference
28   with due process."  The claims, however, are based on the same

conduct and, as explained in the Court's prior order, no constitutional claim can lie for Ms. Appling's and Mr. Aguilar's alleged attempts to persuade CPUC employees not to cooperate with Plaintiff during her investigation.

Because Plaintiff did not cure the deficiencies identified by the Court, her due process claim is dismissed.

VIII. Intentional Infliction of Emotional Distress

The Court previously dismissed Plaintiff's claim for the common law tort of intentional infliction of emotional distress because: 1) she did not first file an administrative claim pursuant to the California Tort Claims Act (TCA), as she was required to do, see Cal. Gov't Code § 945.4; and 2) she did not allege conduct so extreme as to "exceed all bounds of that usually tolerated in a civilized community," Cervantez v. J.C. Penney Co., Inc., 24 Cal. 3d 579, 593 (1979), or distress so severe "that no reasonable [person] in a civilized society should be expected to endure it," Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970). The Court informed Plaintiff that, if she chose to assert a claim for intentional infliction of emotional distress, she must allege that she complied with the claims-presentation requirements of the TCA and must allege facts showing that she was subjected to extreme and outrageous conduct exceeding all bounds of that usually tolerated in a civilized community. The second amended complaint does neither of these things. Accordingly, the claim for intentional infliction of emotional distress is dismissed with prejudice.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss

**United States District Court**
For the Northern District of California

1  (Docket Nos. 103 and 107) are GRANTED IN PART and DENIED IN PART.

2  Plaintiff may proceed with: 1) her Title VII claim against the CPUC

3  for failing to promote her on the basis of her race; and 2) her

4  Title VII claim against the CPUC for "stripping" her performance

5  review from her personnel file in retaliation for filing this

6  lawsuit.  All other claims are dismissed with prejudice.[7]

7       A case management conference is scheduled for March 3, 2009 at

8  2:00 p.m.  The parties must file separate case management

9  statements by February 17, 2009.[8]  Plaintiff may not serve any

10 discovery requests until after the case management conference.

11      IT IS SO ORDERED.

12

13 Dated: 2/3/09                    _____

14                                  CLAUDIA WILKEN
                                    United States District Judge

15

16

17

18

19

20

21

22

23

24      [7]Plaintiff's motion for leave to file her opposition brief
   late and over the page limit (Docket No. 112) is GRANTED.  The
25 parties' requests for judicial notice are DENIED except as
   otherwise noted in this order.
26
        [8]Plaintiff is referred to the Standing Order for All Judges of
27 the Northern District of California -- Contents of Joint Case
   Management Statement, which can be found on the Court's website at
28 http://www.cand.uscourts.gov.

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DONNA HINES,

        Plaintiff,

   v.

CALIFORNIA   PUBLIC   UTILITIES
COMMISSION et al,

        Defendant.
_____/

Case Number: CV07-04145 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 3, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Donna  Hines
268  Bush Street, #3204
San Francisco,  CA 94104

Dated: February 3, 2009

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

United States District Court
For the Northern District of California

26