United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONNA HINES,

        Plaintiff,

   v.

CALIFORNIA PUBLIC UTILITIES
COMMISSION, AROCLES AGUILAR, DANA S.
APPLING, ROBERT J. WULLENJOHN, STATE
PERSONNEL BOARD, GREGORY W. BROWN and
FLOYD D. SHIMOMURA,

        Defendants.
_____/

No. C 07-04145 CW

ORDER GRANTING
DEFENDANT CALIFORNIA
PUBLIC UTILITIES
COMMISSION'S MOTION
FOR SUMMARY JUDGMENT
AND DENYING
PLAINTIFF'S MOTION
FOR RULE 56(f)
CONTINUANCE AND
MOTION FOR SUMMARY
JUDGMENT
(Docket Nos. 284,
348 and 358)

    Plaintiff Donna Hines, who is proceeding pro se, charges
Defendant California Public Utilities Commission (CPUC) with race
discrimination and retaliation in violation of Title VII of the
Civil Rights Act of 1964.  The CPUC moves for summary judgment on
Plaintiff's claims.  Plaintiff opposes the CPUC's motion and moves
for a continuance under Federal Rule of Civil Procedure 56(f).  She
also cross-moves for summary judgment.  The CPUC opposes
Plaintiff's motions.  The motions were taken under submission on
the papers.  Having considered the papers submitted by the parties,
the Court GRANTS the CPUC's motion for summary judgment and DENIES
Plaintiff's motion for a continuance and motion for summary

United States District Court
For the Northern District of California

1   judgment.

2                               BACKGROUND

3   I.    Factual Background

4        Plaintiff is an African-American woman.  She began working for

5   the CPUC in June, 2002 and continues to be employed as a Public

6   Utilities Regulatory Analyst (PURA).

7        A.    Plaintiff's Personnel History and Positions To Which She
               Applied
8
         PURA positions are classified into levels.  An analyst's
9
    responsibilities increase at each successive classification level.
10
         Plaintiff was hired at the PURA-II level.  Approximately one
11
    year later, she was promoted to the PURA-III level through the
12
    "promotion-in-place procedure."  Lee Decl. ¶ 2.  Under this
13
    procedure, which applies to PURA levels I through III, an analyst
14
    may be promoted to a higher classification after achieving a
15
    sufficiently high rank on the required state civil service
16
    examination.
17
         From August, 2005 through May, 2007, Plaintiff applied for
18
    nine positions at the PURA-IV and PURA-V levels.  Unlike with
19
    promotions within the lower PURA levels, advancements to these
20
    positions entail successful completion of the CPUC's competitive,
21
    multi-step application process.
22
         At the first step, candidates take a civil service eligibility
23
    examination, which evaluates their "knowledge, skills and abilities
24
    to perform specific tasks at the level of the desired
25
    classification."  Lee Decl. ¶ 7.  These examinations have a written
26
    and an oral component.  The written portion is graded "blindly,"
27
    which means that the graders do not know the identities of the
28

                                    2

examinees.  Id. ¶ 8.  The raw scores are then adjusted based on a scale set by the California State Personnel Board (SPB) and assigned a rank.  Candidates who score in the top three ranks on an exam are deemed "reachable," making them eligible to apply for positions in the level for which they tested.  Id. ¶¶ 9 and 10.

At the second step, candidates apply for particular positions. To do so, they submit an STD-678, a standard form on which candidates detail their employment and education history, and a Statement of Qualifications (SOQ).  A panel of two to three raters evaluates the SOQs, taking into consideration "standardized rating criteria."  Lee Decl. ¶ 11.  The candidate with the highest SOQ score, relative to the others, is offered the position.  "The contents of a candidate's personnel file are not reviewed by those responsible for selecting candidates through this process."  Id.

Plaintiff took PURA-IV and PURA-V eligibility exams on July 11, 2005 and March 29, 2006 respectively.  Based on her rank on these exams, she was eligible to apply for positions in these classifications.[1]

On August 15, 2005, Plaintiff applied for three positions at the PURA-IV level.  For the first position, which was in the Communications Division, Michael Amato and Phyllis White rated Plaintiff's SOQ at 4.  The CPUC selected Eric Van Wambeke, whose

---

[1] Plaintiff appears to object to the evidence contained in the Declaration of Grant Lee concerning her applications for these positions.  She asserts that Mr. Lee's "oath" is deficient because he does not affirm that "(1) all material facts regarding the position[s] have been produced via discovery and are before the Court; (2) that no material facts regarding the job application[s] have been omitted, modified and/or altered since its creation . . . ."  Opp'n at 13-14.  No such oath is necessary for evidence to be admissible.

United States District Court
For the Northern District of California

SOQ received a 6.  For the second position, which was also in the Communications Division, Michael Amato and Cherrie Conner rated Plaintiff's SOQ at 5.  The CPUC selected Sue Wong, whose SOQ received a 6.  For the third position, which was in the Energy Division, Colette Kersten and Richard Meyers rated Plaintiff's SOQ at 8.  The CPUC selected Keith White, whose SOQ received a 9.

On March 3, 2006, Plaintiff applied for a PURA-IV position in the Division of Ratepayer Advocates.  Christopher Danforth and Joseph Abhulimen rated Plaintiff's SOQ at 4.  Theodore Geilen, who scored a 6, was offered the position.

On May 1, 2006, Plaintiff applied for a PURA-IV position in the Division of Strategic Planning.  Julie Fitch and Laura Doll rated Plaintiff's SOQ at 93 and invited her to interview.  She scored a 16 on her interview.  Andrew Schwartz, who received a 120 on his SOQ and a 23 on his interview, was offered the position.

On July 11, 2006, Plaintiff applied for a PURA-V position in the Energy Division.  Natalie Walsh and Robert Strauss rated Plaintiff's SOQ at 6.  Matthew Deal, whose SOQ scored a 9, was offered the position.

On November 2, 2006, Plaintiff applied for another PURA-V position in the Energy Division.  Judith Ilké and Robert Strauss rated Plaintiff's SOQ.  She earned a total score of 4, with an average score of 2 from each rater.  Scott Murtishaw and Wade McCartney were the successful candidates.  Murtishaw earned a total score of 9, with an average score of 4.5 from each rater; McCartney earned a total score of 8, with an average score of 4 from each rater.

On April 17, 2007, Plaintiff applied for a PURA-V position in

the Division of Ratepayer Advocates (DRA).  Mark Bumgardner and Clayton Tang rated Plaintiff's SOQ and she received a total score of 19.  Dao Phan, who received a total score of 27, was offered the position.

Finally, on May 17, 2007, Plaintiff applied for a PURA-V position in the Division of Strategic Planning.  Julie Fitch and Laura Doll rated Plaintiff's SOQ at a total score of 81.  Simon Baker, whose SOQ received a 140, was offered the position.

During this same period, Plaintiff sought a Rotational Advisor position.  In these positions, which are short-term assignments, employees are "on loan" to CPUC Commissioners' offices.  Mattias Decl. ¶ 2.  On September 1, 2006, Plaintiff applied for such a position with Commissioner Peevey.  Plaintiff was not a finalist for the position.  Andrew Schwartz was selected.

> B.   Complaints Filed with the California State Personnel Board, the U.S. Equal Employment Opportunity Commission (EEOC) and the California Department of Fair Employment and Housing (DFEH)

On February 23, 2006, Plaintiff filed a complaint with the SPB, claiming that her supervisor at that time, Robert Wollenjohn, retaliated against her for whistleblowing.[2]  On or after January 18, 2007, the SPB dismissed Plaintiff's complaint.

---

[2] As it has in prior orders, the Court takes judicial notice of the contents of the SPB decision, but not for the truth of the facts stated therein.  See Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (court may take judicial notice of facts not reasonably subject to dispute, either because they are generally known, are matters of public record or are capable of accurate and ready determination); see also Fed. R. Evid. 201.  Plaintiff states that "the January 18, 2007 SPB decision is not a reliable legal source on which the Court may rule for Summary Judgment."  Opp'n at 9.  To the extent that this is an objection, it is OVERRULED for the reasons stated herein.

In or around July, 2006, Plaintiff filed a charge with the DFEH, alleging racial discrimination and retaliation. She requested a right-to-sue letter on January 19, 2007, which the DFEH issued on or around March 1, 2007. See 2d Am. Compl (2AC), Ex. A; Coffman Decl., Ex. 5 at AGO-0439.

On or about March 21, 2007, Plaintiff filed a charge with the EEOC and the DFEH, alleging retaliation. On or about May 18, 2007, the EEOC issued Plaintiff a right-to-sue letter.

II.  Procedural History

Plaintiff initiated this action on August 17, 2007, asserting claims against the CPUC; Arocles Aguilar, an attorney for the CPUC; Dana Appling, the director of the DRA; and Robert J. Wullenjohn, her former supervisor. She filed an amended complaint on December 13, 2007, adding as Defendants the SPB; Gregory W. Brown, the administrative law judge who presided over her SPB case; and Floyd D. Shimomura, the former executive director of the SPB (collectively, SPB Defendants). The Court subsequently dismissed Plaintiff's amended complaint with leave to amend (Docket No. 98).

Plaintiff filed her second complaint on July 31, 2008. On February 3, 2009, the Court dismissed most of Plaintiff's claims with prejudice (Docket No. 117). The SPB Defendants sought the entry of judgment pursuant to Federal Rule of Civil Procedure 54(b), which the Court denied.

The remaining Defendant is the CPUC, against which Plaintiff has two extant claims: (1) a Title VII racial discrimination claim for failing to promote her and (2) a Title VII claim for "stripping" her performance review from her personnel file in retaliation for this lawsuit.

United States District Court
For the Northern District of California

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods.  Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

The moving party may produce evidence negating an

7

> essential element of the nonmoving party's case, or,
> after suitable discovery, the moving party may show that
> the nonmoving party does not have enough evidence of an
> essential element of its claim or defense to carry its
> ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id. at 1103.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue.  UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  That

8

is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue.  Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991).  Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case.  UA Local 343, 48 F.3d at 1471.  The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible."  Id.  This standard does not change merely because resolution of the relevant issue is "highly fact specific."  See id.

DISCUSSION

I.   The CPUC's Motion for Summary Judgment

    A.   Discrimination Claim

        1.   Applicable Law

In disparate treatment cases, plaintiffs can prove intentional discrimination through direct or indirect evidence.  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (citation and internal quotation and editing marks omitted).

Because direct proof of intentional discrimination is rare, such claims may be proved circumstantially.  See Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).  To do so, plaintiffs must satisfy the burden-shifting analysis set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).  Dominguez-Curry, 424 F.3d at 1037.  Within this framework, plaintiffs may establish a prima facie case for discrimination based on a failure to promote by reference to

United States District Court
For the Northern District of California

circumstantial evidence; to do so, plaintiffs must show that they are members of a protected class; that they applied for and were qualified for the position they were denied; that they were rejected despite their qualifications; and that the position was filled with an employee not of their class.  Id. (citing McDonnell Douglas, 411 U.S. at 802).  Once plaintiffs establish a prima facie case, a presumption of discriminatory intent arises.  Dominguez-Curry, 424 F.3d at 1037.  To overcome this presumption, defendants must come forward with a legitimate, non-discriminatory reason for the employment decision.  Id.  If defendants provide that explanation, the presumption disappears and plaintiffs must satisfy their ultimate burden of persuasion that defendants acted with discriminatory intent.  Id.

To survive summary judgment then, plaintiffs must introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason defendants articulated is a pretext for discrimination.  Plaintiffs may rely on the same evidence used to establish a prima facie case or put forth additional evidence.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000); Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994). "[I]n those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact." Wallis, 26 F.3d at 890.  When plaintiffs present direct evidence that the proffered explanation is a pretext for discrimination, "very little evidence" is required to avoid summary judgment.  EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009).  In contrast, when plaintiffs rely on

circumstantial evidence, "'that evidence must be specific and substantial to defeat the employer's motion for summary judgment.'" Id. (quoting Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005)).

The Ninth Circuit has instructed that district courts must be cautious in granting summary judgment for employers on discrimination claims. See Lam v. Univ. of Hawai'i, 40 F.3d 1551, 1564 (9th Cir. 1994) ("'We require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry" -- one that is most appropriately conducted by the factfinder.'") (quoting Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1111 (9th Cir. 1991)).

        2.   Analysis

The CPUC seeks summary judgment on the ground that Plaintiff cannot establish a prima facie case because she was not qualified for the positions for which she applied and she does not offer evidence to support an inference of discrimination. Even if she had, the CPUC contends, Plaintiff fails to create a triable issue on whether its proffered reasons were pretextual.

Plaintiff makes out a prima facie case of racial discrimination. The CPUC contends that Plaintiff was not qualified for her position because the other candidates scored higher on their "Statement of Qualifications . . . and/or oral interviews." Reply at 1. However, this evidence goes to the CPUC's non-discriminatory reasons for not promoting Plaintiff. See Dominquez-Curry, 424 F.3d at 1037 (stating that prima facie case was met even though defendant claimed that another candidate was "more

qualified"). If this evidence were to be considered at the first stage of the McDonnell Douglas analysis, it would blur the distinction between a plaintiff's burden to demonstrate qualifications and the employer's responsibility to offer a legitimate basis for not promoting the plaintiff. Moreover, at the prima facie stage, a plaintiff's burden "is 'minimal and does not even need to rise to the level of a preponderance of the evidence.'" Id. (quoting Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002)). It is undisputed that Plaintiff ranked sufficiently high on her civil service examinations to be eligible to apply for the positions; thus, Plaintiff was qualified for purposes of her prima facie showing. Further, there is no evidence that any of the positions were filled by African-Americans. Consequently, Plaintiff satisfies her initial burden.

The CPUC provides evidence that Plaintiff was not promoted because the other candidates were more qualified, which shifts the burden back to Plaintiff to offer evidence that supports an inference that this non-discriminatory reason was pretextual. She offers multiple theories, all of which are unavailing.

Plaintiff contends that the CPUC's application process for PURA-IV and PURA-V positions "lacks statutory authority." Opp'n at 12. In particular, she asserts that no statute or regulation authorizes the use of an SOQ, that the CPUC fails to consider information included on the STD-678 form in "willful non-compliance and/or circumvention of California Civil Service requirements" and that "the SOQ process enjoys no review from independent State agencies charged with responsibility for oversight of Defendants' personnel policies." Opp'n at 12-13. Even if these criticisms

United States District Court
For the Northern District of California

were well-taken,[3] they do not provide evidence that the CPUC's reasons were false, which is the relevant inquiry at the pretext stage.  Courts "only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'"  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (quoting Johnson v. Nordstrom, Inc., 260 F.3d 727, 733 (7th Cir. 2001)).  The statutory basis and level of governmental oversight of the application process offer no insight into the veracity of the CPUC's proffered reason or whether those making personnel decisions harbored discriminatory animus.

Plaintiff next raises issues concerning her May, 2006 application to a PURA-IV position in the Division of Strategic Planning.  She cites a memorandum on the "Justification for PURA IV offer in DSP," authored by Ms. Fitch, which states that Mr. Schwartz "placed in SPB Rank 2 in the examination process, which is higher than any of the other candidates."  Lee Decl., Ex. L at DH003524.  Plaintiff asserts and offers evidence that she also placed at SPB Rank 2 for this exam, which is inconsistent with Ms. Fitch's statement that Mr. Schwartz had the highest score.  Although the memorandum appears incorrect on this point, this discrepancy is immaterial to whether Plaintiff was discriminated against on the basis of race.  At worst, Ms. Fitch made a factual error.  However, as noted above, even a baseless reason, so long as it is not tethered to discriminatory animus, is sufficient to

---

[3] Plaintiff offers no reason to believe that the CPUC's application process is unlawful.  The CPUC uses the STD-678 form in accordance with California law.  See Cal. Gov. Code §§ 18720-18720.5.  Further, Plaintiff does not cite any authority limiting the CPUC's review of an applicant to the information contained on the STD-678.

dispel the presumption of discrimination created by a plaintiff's prima facie case.

In response, Plaintiff suggests that Ms. Fitch harbors discriminatory animus. However, she fails to offer any admissible evidence to support her assertion. She cites her deposition testimony, in which she recounted a "water cooler conversation" she had with Roosevelt Grant, who apparently reported to Ms. Fitch. Hines Decl., Attachment G at 351:18-352:1. According to Plaintiff, Mr. Grant, who is African-American, did not have a positive experience working for Ms. Fitch. In her conversation with him about this issue, Plaintiff states that "both race and gender came up," although she was "not sure whether if [it was] more of a gender issue than the race issue or vice versa." Id. at 359:11-15. Even if this testimony were not inadmissible hearsay,[4] it is neither direct nor specific and substantial circumstantial evidence of a pretext for discrimination. Plaintiff does not identify acts taken by Ms. Fitch against Mr. Grant that would lend credence to his belief that his negative experience was driven by discriminatory animus; mere speculation is not sufficient to create a triable issue. Villiarimo, 281 F.3d at 1065 n.10. Furthermore, Ms. Fitch apparently hired Mr. Grant, which further diminishes any inference that she harbored discriminatory animus. See Coghlan, 413 F.3d at 1096. Finally, Plaintiff stated that she had not experienced any discriminatory animus from Ms. Fitch; her

---

[4] The CPUC objects to this testimony as hearsay. Mr. Grant did not submit a declaration in support of Plaintiff's opposition. Because these statements are proffered for the truth of the matter asserted, the Court SUSTAINS the CPUC's objection. Fed. R. Evid. 802.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

speculation "that there may be -- conscious or otherwise -- some element of racial bias" on the part of Ms. Fitch does not save her claim.  Hines Decl., Attachment G at 353:10-16.

Plaintiff also points to the hiring decisions concerning PURA-V positions in the Energy Division, for which she applied in November, 2006.  She asserts that, although a memo indicated that four positions were open, only two were filled; she complains "that she was never notified of the outcome or status of those unfilled . . . positions."  Opp'n at 17.  She argues that "Defendants disregarded her candidacy, and continued to seek applications of her qualifications (or possibly less) to fill those vacancies."  Id.  This does not create a genuine issue of material fact concerning pretext.  Plaintiff offers no evidence to support her assertion that the CPUC unlawfully dismissed her application and is continuing to search for candidates, three-and-a-half years after the openings were announced.  Moreover, that the CPUC announced the availability of four positions and only filled two, without more, does not support an inference that Plaintiff was denied a promotion based on her race.

Also, concerning these positions, Plaintiff complains that Mr. Murtishaw, who was one of the two hired, was placed in SPB rank four based on his civil service exam, whereas Plaintiff was placed in SPB rank three; she asserts that "Defendants continue to use SPB ranking as a criteria [sic], but 'jump over' Plaintiff, to award to a lower ranked candidate."[5]  Opp'n at 17.  As noted above, the SPB

_____

[5] These SPB ranks are assigned in descending order: the highest scores on the civil service exam are placed in the first

(continued...)

15

rank is used only to determine a candidate's eligibility to apply;
the highest SOQ score controls whether the candidate is selected.
Mr. Murtishaw received a 4.5 on his SOQ, whereas Plaintiff received
a lower score of 2.  Even if there were any inconsistencies,[6]
Plaintiff proffers no evidence to suggest that the CPUC's proffered
reason was false or that she was denied a position because of her
race.

Plaintiff offers no evidence to create a reasonable inference
that any CPUC employee harbored discriminatory animus.  Indeed,
Plaintiff conceded at her deposition that she did not experience
any racial animus by any of the raters involved with her
applications.  Coffman Decl., Hines Depo. at 162:24-163:3; 259:5-
14.  Accordingly, the Court grants summary judgment in favor of the
CPUC on Plaintiff's Title VII claim for race discrimination.

B.   Retaliation Claim

Courts apply the McDonnell Douglas burden shifting test to
Title VII retaliation claims.  Villiarimo, 281 F.3d at 1064.  To
make out a prima facie case for retaliation, plaintiffs must show
that (1) they engaged in a protected activity, (2) they suffered an
adverse employment decision and (3) there was a causal link between

---

[5](...continued)
rank.  Thus, Plaintiff's rank of 3 shows that she achieved a higher
score than Murtishaw on the exam.

[6] The CPUC asserts that, even though Mr. Murtishaw was placed
in SPB rank four based on his civil service exam, he was
nevertheless eligible to apply, notwithstanding the general
practice to take only those candidates in the first, second or
third ranks.  This was because "candidates who score in Rank 4 may
become list-eligible if candidates in tier 1 'clear' the
eligibility list by choosing or declining other promotional
opportunities, thereby allowing the Rank 4 candidates to move up
into the top tier."  Reply at 11.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

their activity and the employer's decision.   Id.

As explained above, the gravamen of Plaintiff's claim is that, in retaliation for filing this lawsuit, her personnel file was "stripped" of one page of her May, 2007 performance evaluation.[7] The CPUC argues that it is entitled to summary judgment because Plaintiff does not create a triable issue concerning causation.

As an initial matter, there is no evidence that any page was "stripped" from her personnel file.  Plaintiff testified at her deposition that she could not "confirm with conviction" that the page at issue was ever part of her file.  Coffman Decl., Hines Depo. 147:20-148:3.  Even if the page had been a part of her file and had subsequently been removed, Plaintiff does not demonstrate that this constituted or resulted in an adverse employment action. Plaintiff was denied a PURA-V position after the alleged removal; however, as noted above, applying for this position did not entail a review of her personnel file and, thus, the "stripping" of any page would have been immaterial.  Citing section 250 of title 2 of the California Code of Regulations and a 2004 SPB memorandum, Plaintiff asserts that, because civil service appointments must be based in part on a candidate's fitness for the position, a "reasonable trier of fact could infer that test of 'fitness' includes a current and positive staff performance evaluation, as a prerequisite to promotion within civil service ranks."  Opp'n at 6.

---

[7] Plaintiff presents arguments concerning other alleged retaliatory acts which occurred prior to the initiation of this lawsuit.  These arguments are irrelevant.  In its prior order, the Court dismissed with prejudice any claim for retaliation based on events that transpired prior to the initiation of this action. Even if these acts remained part of Plaintiff's claim for retaliation, she fails to create a causal link between them and protected activity.

United States District Court
For the Northern District of California

However, neither section 250 nor the memorandum is inconsistent with the CPUC's assertion that it does not consider personnel files in decisions involving PURA-V positions.  The CPUC asserts that its decisions to promote eligible candidates are based on the SOQs.

Even if she had demonstrated an adverse employment action, Plaintiff fails to support an inference that the action was undertaken in retaliation for this lawsuit.  She does not even identify who purportedly removed the page.  She contends that Mr. Abhulimen, who authored the evaluation as her supervisor, "was aware of her qualifications and interest in candidacy for promotion, as early as two years prior to filing this present action."  Opp'n at 7-8.  However, even if he were the person who removed the page, Plaintiff points to no evidence that Mr. Abhulimen knew of this lawsuit and retaliated against her therefor.

To the extent that Plaintiff argues that Mr. Abhulimen retaliated based on her SPB complaint, her Title VII retaliation claim would fail nevertheless.  As noted above, before the SPB, Plaintiff alleged retaliation for her whistleblowing activity; this cannot support a Title VII retaliation claim.  See 42 U.S.C. § 2000e-3(a).  Further, Plaintiff does not create a triable issue concerning causation.  She claims that the page was removed sometime after October, 2007; her SPB case was dismissed in January, 2007.  Plaintiff offers no direct evidence of a causal link and the nine months that elapsed between the end of her SPB case and the earliest the page could have been removed is too attenuated to support any inference of causation.

Plaintiff also argues that the "'trigger event' that motivates Defendants' retaliatory conduct dates back to Plaintiff's

18

**United States District Court**
For the Northern District of California

relationship with Mr. Wullenjohn and subsequent filing of charges of retaliation and racial discrimination with the SPB." Opp'n at 8. This argument is unavailing. Plaintiff offers no evidence that Mr. Wullenjohn was involved in the alleged retaliatory conduct. And, as already explained, Plaintiff cannot avoid summary judgment based on a theory of retaliation based on her SPB complaint.

Finally, Plaintiff suggests that Ms. Appling, the director of the division in which Plaintiff worked, "would not be pleased with Plaintiff's additional action in processing complaints . . . with this present Court." Opp'n at 8. She cites Mr. Wollenjohn's testimony from the SPB proceedings, in which he discussed a note sent by Plaintiff to Ms. Appling criticizing her prior supervisor and stated that Ms. Appling "didn't want to see these kinds of notes." Pl.'s RJN of Nov. 26, 2007, Appx. H at 75:2-17. However, the fact that Ms. Appling did not want to see notes of the kind Plaintiff sent her in September, 2004 does not support an inference that Ms. Appling retaliated against her for this lawsuit in or around October, 2007. Plaintiff offers no other direct or circumstantial evidence of retaliatory causation.

Plaintiff does not make out a prima facie case for retaliation. Consequently, summary judgment in favor of the CPUC is appropriate on Plaintiff's Title VII retaliation claim.

C. Plaintiff's Motion for Continuance

Rule 56(f) of the Federal Rules of Civil Procedure provides that the court may deny or continue a motion for summary judgment "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." The requesting party must show (1) it has set forth

in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist and (3) the sought-after facts are essential to oppose summary judgment.  Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008).

On May 20, 2010, Plaintiff filed a "Motion for Continuance of Hearing on Defendants' Motion for Summary Adjudication of Issues." She contended that there was an ongoing dispute concerning the CPUC's failure to respond to discovery propounded on April 30, 2010, the fact discovery deadline.  However, on May 20, 2010, Magistrate Judge Edward M. Chen denied Plaintiff's request for an order compelling the CPUC to respond, finding Plaintiff's discovery request untimely.  (Docket No. 347.)

Plaintiff does not offer any other basis to justify a Rule 56(f) continuance.  Accordingly, her motion is denied and summary judgment granted in favor of the CPUC on all of her claims.

II.  Plaintiff's Motion for Summary Judgment

Plaintiff argues that she is entitled to summary judgment on grounds that the CPUC's reliance on the SOQ constitutes an "unlawful employment practice," that the failure to give proper weight to the STD-678 demonstrates a "practice of institutional fraud against the State" and that she provides other sufficient direct and indirect evidence to obviate the need for trial.  Pl.'s Mot. for Summ. J. at 6-10.

Plaintiff fails to create a triable issue on her discrimination and retaliation claims, let alone to show that she is entitled to judgment as a matter of law.  Her attacks on the CPUC's selection process do not demonstrate that she was

20

**United States District Court**
For the Northern District of California

discriminated against on the basis of race or faced retaliation because of this lawsuit.

She asserts that summary judgment in her favor is proper because the CPUC fails to substantiate the statutory basis for its selection process.  As stated above, the legal basis for the CPUC's personnel procedures is not relevant to whether Plaintiff was discriminated against on the basis of race.  Moreover, because she has the burden to prove her claims at trial, she must offer evidence that, if undisputed, entitles her to prevail on her claims; unless such a showing is made, the CPUC has no burden of production.  Plaintiff offers no evidence -- let alone uncontroverted evidence -- that the CPUC has implemented an unlawful promotion process that it uses to discriminate on the basis of race.

Plaintiff also argues that the fact that she was not selected for one of the four positions in the Energy Division warrants a conclusion that she suffered race discrimination.  However, as explained above, the CPUC asserts that she did not attain the highest SOQ score for those positions, which precludes judgment in her favor.

Accordingly, the Court denies Plaintiff's motion for summary judgment.

CONCLUSION

For the foregoing reasons, the Court GRANTS the CPUC's Motion for Summary Judgment (Docket No. 284) and DENIES Plaintiff's motion for a continuance pursuant to Rule 56(f) (Docket No. 348) and motion for summary judgment (Docket No. 358).  All remaining dates are VACATED.

United States District Court
For the Northern District of California

1     The Clerk shall enter judgment in favor of the CPUC, Arocles

2 Aguilar, Dana Appling, Robert J. Wullenjohn, the SPB, Gregory W.

3 Brown and Floyd D. Shimomura.  Defendants shall recover costs from

4 Plaintiff.  The Clerk shall also close the file.

5     IT IS SO ORDERED.

6

7 Dated: July 27, 2010            _____

8                      CLAUDIA WILKEN
                     United States District Judge

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

DONNA HINES,

             Plaintiff,

  v.

CALIFORNIA PUBLIC UTILITIES
COMMISSION, et al.,

             Defendants.

_____/

           Case Number: CV07-04145 CW

           **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 27, 2010, I SERVED a true and correct copy of the attached, by placing said copy in a postage paid envelope addressed to the person hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy into an inter-office delivery receptacle located in the Clerk's office.

Donna  Hines
268  Bush Street, #3204
San Francisco,  CA 94104

Dated: July 27, 2010

           Richard W. Wieking, Clerk
           By: MP, Deputy Clerk